**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | x |
| JULIO & SONS COMPANY, | x |
| | x |
| Plaintiff, | x |
| | x |
| v. | x |
| | x |
| TRAVELERS CASUALTY AND SURETY | x |
| COMPANY OF AMERICA, | x |
| | x |
| Defendant. | x |
| | x |

08 Civ. 03001 (RJH)
ECF Case

## JULIO & SONS' MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION FOR PRELIMINARY INJUNCTION

Philip M. Smith (PS 8132)
1185 Avenue of the Americas
New York, New York 10036
(646) 557-5100 Telephone
(646) 557-5101 Facsimile

- and -

John W. Schryber (JS 7881)
2550 M Street, N.W.
Washington, D.C. 20037
(202) 457-6000 Telephone
(202) 457-6315 Facsimile

Of Counsel
Joseph M. Cox (*pro hac vice*)
Shannon W. Conway (*pro hac vice*)
2001 Ross Avenue, Suite 3000
Dallas, Texas 75201
(214) 758-1500 Telephone
(214) 758-1550 Facsimile

*Attorneys for Plaintiff*
*Julio & Sons Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.............................................................................................1

FACTUAL BACKGROUND...............................................................................................4

    A. Travelers' Promise in the Policy to Fund Defense Expenses .........................................4

    B. The Policy's "Breach of Contract" Exclusion ...............................................................6

    C. The RRGC Suit.............................................................................................................6

    D. Travelers' Acknowledgement of the RRGC Suit and Disclaimer of Coverage .............7

LEGAL STANDARD.........................................................................................................8

ARGUMENT....................................................................................................................10

POINT I:      TRAVELERS IS REQUIRED TO ADVANCE DEFENSE
               COSTS NOTWITHSTANDING ITS ASSERTION OF ANY
               COVERAGE DEFENSES ........................................................................10

POINT II:     THE RRGC SUIT ASSERTS COVERED CLAIMS AGAINST
               THE INSUREDS, THEREBY TRIGGERING TRAVELERS'
               DUTY TO DEFEND ...............................................................................12

               A. Mr. Glaser is an Insured Person under the Policy.................................12

               B. The Policy's Breach of Contract Exclusion Does Not Negate
                   Travelers' Duty to Advance the Costs of Defending Julio &
                   Sons in the RRGC Suit .......................................................................13

POINT III:    JULIO & SONS HAS MADE AN APPROPRIATE SHOWING OF
               BOTH THE MERITS OF THIS CLAIM, AND THE LIKELIHOOD
               OF IRREPARABLE INJURY ..................................................................15

CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Admiral Ins. Co. v. Briggs,*
    264 F. Supp. 2d 460 (N.D. Tex. 2003) ...................................................10, 13

*Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
    99 F.3d 695 (5th Cir. 1996) ..........................................................10, 12

*Finger Furniture Co., Inc. v. Travelers Indem. Co. of Connecticut,*
    No. Civ.A. H-01-2797, 2002 WL 32113755 (S.D. Tex. Aug. 19, 2002) ..............10, 12

*Harken Exploration Co. v. Sphere Drake Ins. PLC,*
    261 F.3d 461 (5th Cir. 2001) ..........................................................3, 10

*In re Enron Corp. Securities, Derivative & "Erisa" Litigation,*
    391 F. Supp. 2d 541 (S.D. Tex. 2005) ...................................................10, 11

*Little v. MGIC Indem. Corp.,*
    649 F. Supp. 1460 (W.D. Pa. 1986), *aff'd*, 836 F.2d 789 (3d Cir. 1987) ...................11

*Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*
    939 S.W.2d 139 (Tex. 1997)...........................................................3

*Rhodes v. Chicago Ins. Co.,*
    719 F.2d 116 (5th Cir. 1983) ..........................................................10

*State Farm Fire & Cas. Co. v. Wade,*
    827 S.W.2d 448 (Tex.App.—Corpus Christi 1992, writ denied) ................................12

*St. Paul Guardian Ins. Co. v. Centrum GS Ltd.,*
    283 F.3d 709 (5th Cir. 2002) ..........................................................3

*Sunward Electronics, Inc. v. McDonald,*
    362 F.3d 17 (2d Cir. 2004)...........................................................8

*Wedtech Corp. v. Federal Ins. Co.,*
    740 F. Supp. 214 (S.D.N.Y. 1990) .......................................................15

*Western Heritage Ins. Co. v. River Entm't.,*
    998 F.2d 311 (5th Cir. 1993) ..........................................................12

## TABLE OF AUTHORITIES (cont'd)

<u>Page</u>

*Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,*
    267 F. Supp. 2d 601 (E.D. Tex. 2003).........................................................................10

*Worldcom, Inc. Securities Litigation Master File,*
    354 F. Supp. 2d 455 (S.D.N.Y. 2005).......................................................1, 8, 9, 11, 15

**Rules**

Fed. R. Civ. P. 65 ..........................................................................................................8

**Other Authorities**

ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 4:3 (5th ed. 2007) ...............................12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| JULIO & SONS COMPANY, | x | |
| | x | |
| Plaintiff, | x | |
| | x | 08 Civ. 03001 (RJH) |
| v. | x | ECF Case |
| | x | |
| TRAVELERS CASUALTY AND SURETY | x | |
| COMPANY OF AMERICA, | x | |
| | x | |
| Defendant. | x | |
| | x | |

## JULIO & SONS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Julio & Sons Company ("Julio & Sons"), by its counsel undersigned, respectfully submits this Memorandum of Law in Support of its Motion for Preliminary Injunction and states as follows:

### PRELIMINARY STATEMENT

Julio & Sons moves herein for a "Worldcom injunction" – i.e., an injunction requiring that the issuer of a liability insurance policy cease and desist from withholding of policy proceeds that are required to be advanced to the insured as provisional payment of defense costs incurred by the insured in defense of a covered claim. This is precisely the relief that was granted to an insured under a Directors & Officers liability insurance policy by Judge Cote in *Worldcom, Inc. Securities Litigation Master File*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005), enjoining the insurers involved in that litigation from their continued refusal to comply with their contractual obligations to advance defense costs as they were incurred by the insured. The injunction requested by Julio & Sons here, as the injunction granted in *Worldcom*, is the accepted

way in this District (and elsewhere) to provide immediate relief for a scenario that courts in this District deem to present, inherently, irreparable and immediate hardship – the failure of an insurer to advance defense costs incurred by the insured in the face of an insurance policy that promises to "advance" such costs to the insured.

In this case, the recalcitrant insurer is Travelers Casualty & Surety Company of America ("Travelers"), the issuer of a policy titled "Wrap Policy – Directors & Officers Liability Insurance and Employment Practices Liability Insurance" (the "Policy"). Although the Policy promises that Travelers will advance costs incurred by a defendant-insured in defense of tort claims asserted against any "Insured Organization" or "Insured Person," Travelers has repudiated its obligations to advance any defense costs incurred by any Insured Organization or Insured Person in defense of a "negligent misrepresentation" claim that has been pending in Texas state court since February 2007. Among the defendants against whom "negligent misrepresentation" is alleged is Julio & Sons, a subsidiary of the named insured, Julio Investors, LP. Inasmuch as the Policy defines the "Insured Organization" to include any "subsidiary" of Julio Investors, Travelers does not dispute that Julio & Sons is an "Insured Organization."

Julio & Sons has incurred liability for defense costs incurred on its own behalf in defense of the Texas suit, as well as for the defense costs incurred by another defendant, Robert V. Glaser, a director of Julio & Sons who Julio & Sons has indemnified because, *inter alia*, Mr. Glaser is alleged to be responsible, at least in part, for the alleged affirmative negligent misrepresentations made by Julio & Sons (and others). Because the Texas suit alleges that each defendant is responsible for the same alleged affirmative negligent misrepresentation without alleging that each defendant actually made any alleged misrepresentation, the complaint also would permit the underlying plaintiffs to pursue a judgment against Julio & Sons on the basis

2

that the alleged misrepresentation was made by Mr. Glaser in a capacity that would allow his statements to be imputed to Julio & Sons.  Indeed, Travelers concedes that it was in possession of information at the time it declined coverage that Mr. Glaser was on "the Board" of the Insured Organization as of the date in February 2007 when the claim was filed.  Under the Policy, an "Insured Person" includes any person who was or is a director (or managing member) of an Insured Organization.

Although the legal standard for determining whether a liability insurer must advance defense costs is whether the underlying suit alleges any claim that, with all ambiguities in the underlying complaint construed in favor of the insured, "may" result in a covered judgment – Travelers patently failed to follow this rule when it denied coverage in the face of the Texas complaint filed in *Retail Restaurant Growth Capital, LP v. MapleWood Partners, L.P., et al.* (the "RRGC suit").  *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) ("The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy."); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 461, 471 (5th Cir. 2001) ("If there is a 'doubt as to whether or not the [factual] allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the act, such doubt will be resolved in [the] insured's favor.'") (quoting *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).  After originally conceding that RRGC's negligent misrepresentation claim arose from statements and omissions about financial transactions that had not yet been contracted for – but which Julio & Sons was merely "planning to enter into" – Travelers reversed course in its declination letter.  In that letter, Travelers re-wrote the Texas complaint, asserting that the only judgment sought by the plaintiffs in the RRGC

3

suit was a judgment for liability under an existing contract. That could not be correct if, as Travelers originally conceded, the RRGC suit sought tort liability for misrepresentations inducing a contractual transaction that Julio & Sons was, at the time, merely "planning to enter into." As for the defense costs incurred by Mr. Glaser (which Julio & Sons is indemnifying), Travelers denied coverage solely on the basis that it was unable to "confirm" the "information" (and allegations) admittedly in its possession that Mr. Glaser was an Insured Person.

Accordingly, as more fully set forth below, this Court should grant Julio & Sons motion for a *Worldcom* injunction, and thereby require Travelers to pay, within ten (10) days of the presentment of Julio & Sons' legal invoices for the defense costs incurred in connection with the underlying RRGC suit, all amounts in such invoices except those which Travelers establishes are not reasonable and necessary, and to advance Julio & Sons' future defense costs as they are incurred in connection with that suit.

## FACTUAL BACKGROUND

### A.    Travelers' Promise in the Policy to Fund Defense Expenses

Travelers does not dispute that Julio & Sons is an **Insured Organization** under the Policy. Declaration of Shannon W. Conway (hereinafter "Conway Decl.") Exh. D, at 3. The Policy sets forth certain promises of coverage to an Insured Organization, including the promise to indemnify liability for "Loss" resulting from claims against (i) "**Insured Persons** for **Wrongful Acts** [...] which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; or (ii) an "**Insured Organization** for **Wrongful Acts** other than **Wrongful Employment Practices**." Conway Decl. Exh. A, at "Directors and Officers Liability coverage Part," Page 1 of 5.

4

Because one of the grants of coverage turns on whether the Insured Organization indemnifies an "Insured Person" for liability such person has incurred as a result of an insured's "Wrongful Acts," the definition of "Wrongful Acts" and "Insured Person" is material. The Policy defines Wrongful Act to include "any ... omission [or] misstatement ... by the **Insured Organization**...." Conway Decl. Exh. A, at "Directors and Officers Liability Coverage Part," Page 2 of 5. "Insured Person" is defined as a person who was (or later became) a "director ... or [managing member] ... of the Insured Organization." Conway Decl. Exh. A, at "Best Foot Forward Endorsement," Page 1 of 3. Thus, coverage for the Insured Organization's indemnity payments to the Insured Person is provided to the extent the underlying "misstatement" claim (i) is asserted against a person who was or, at the time of the claim, currently is, a member of any Insured Organization's management board and (ii) seeks to impose liability on such person as a result, in whole or in part, of a "misstatement" made by an Insured Organization. On or before the date that the underlying RRGC suit was commenced in February 2007, Mr. Glaser was a director of Julio & Sons. Glaser Decl., ¶ 2. With respect to liabilities incurred directly by the Insured Organization as the result of such a claim (i.e., irrespective of any liability incurred derivatively by an Insured Person), the Policy grants coverage except to the extent that the Insured Organization's alleged Wrongful Acts are "Wrongful Employment Practices" – an exception which, in this case, is not invoked.

Besides "judgments" and "settlements," the Policy defines "Loss" to include an insured's liability to defense counsel for "Defense Expenses" incurred in response to the underlying claim. Conway Decl. Exh. A, at "Directors and Officers Liability Coverage Part," Page 2 of 5. However, while the duty to indemnify liability for defense costs might be excluded, ultimately, by a final judgment establishing a coverage exclusion, the Policy requires that Travelers

5

contemporaneously "advance" defense costs of an insured on an as-incurred basis (subject to repayment to Travelers if a final adjudication establishes the facts necessary to establish an exclusion). Conway Decl. Exh. A, at "Common Terms and Conditions," Page 7 of 15.

**B.    The Policy's "Breach of Contract" Exclusion**

The Policy sets forth a number of exclusions, one of which is relevant here – the so-called "breach of contract" exclusion. That exclusion provides that Travelers shall have "no duty to … advance or reimburse **Defense Expenses** for, any **Claim** […] for or arising out of or in consequence of any actual or alleged liability of the **Insured Organization** under any express contract or agreement; for the purposes of this exclusion, an "express contract or agreement" is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making…." Conway Decl. Exh. A, at "Directors and Officers Liability Coverage Part," Page 4 of 5. Thus, the Policy does not negate the duty to advance defense costs where the underlying complaint contains a claim seeking a judgment of tort liability based on allegedly tortious conduct.

**C.    The RRGC Suit**

In February 2007, RRGC filed suit (later amended in October 2007 when RRGC filed its First Amended Petition and again in 2008, when RRGC filed its Second Amended Petition) against two of the Policy's insureds. Conway Decl. Exh. B. The first of these insureds is Julio & Sons, which is indisputably an "Insured Organization." Also named as a defendant in the RRGC suit is Mr. Glaser, who, as noted, was a director of Julio & Sons – a fact of which Travelers was admittedly informed at the time it disclaimed coverage. Conway Decl. Exh. D, at 3 (Travelers' admission that it has "received information through pleadings [filed by a person who, himself, was a member of the Board of Directors of Julio & Sons, Inc., Mr. Abdo Joseph

Shashy that] Mr. Glaser … was elected to the Board but we have been unable to confirm that allegation as true."). *Id.*; *see also* Conway Decl. Exh. E, at ¶¶ 2.08, 5.01 (the "pleading" referenced by Travelers as the source of this information).

The RRGC suit involves a multi-count complaint that alleges multiple theories of liability, only one of which is "breach of contract." Other theories of liability include "negligent misrepresentation" and "fraud." These "misstatement" claims allege, *inter alia*, that Mr. Glaser and Julio & Sons are jointly liable because Julio & Sons "supplied false information for the guidance of RRGC" relative to financial transactions that the insureds were "planning to enter into." Although Mr. Glaser is alleged to be jointly liable on these "misstatement" claims, the RRGC suit does not allege that he is a party to any contract with RRGC (or a guarantor of any contract of Julio & Sons). Nor is Mr. Glaser named as a defendant on the "breach of contract" count. Thus, the claim of joint liability of Mr. Glaser and Julio & Sons for "negligent misrepresentation" and "fraud" is alleged to arise independent of any liability for "breach of contract." Conway Decl. Exh. B, at ¶¶ 36, 43; *accord*, Conway Decl. Exh. C, at 1.

**D.    Travelers' Acknowledgement of the RRGC Suit and Disclaimer of Coverage**

By letter dated March 7, 2007, Travelers acknowledged receipt of the RRGC suit and acknowledged that the suit alleged that the insureds "breached various duties owed to the Plaintiff including fiduciary duties and duties to disclose information pertaining to financial transactions that they had entered into *or were planning to enter into*." Conway Decl. Exh. C. Notwithstanding, Travelers issued a letter dated October 5, 2007 disclaiming coverage. Conway Decl. Exh. D. Whereas Travelers' March 7, 2007 letter acknowledged that the suit alleged breaches of fiduciary duty and misrepresentations that pertained to future contractual arrangements that the insured was merely "planning to enter into," the disclaimer letter re-

7

characterized the suit as *not* including such allegations of tortious misrepresentations. Based on this re-characterization of the RRGC suit, Travelers asserted that the Policy's "breach of contract" exclusion barred coverage of Loss directly suffered by Julio & Sons. Further, the disclaimer letter asserted that Loss sustained indirectly by Julio & Sons via its indemnification of Mr. Glaser's defense costs was not covered because Travelers had not "confirmed" statements made in court filings by another member of the Julio & Sons Board of Directors that Mr. Glaser was also a member of that board.    Conway Decl. Exh. D, at 3 (acknowledging statements contained in Conway Decl. Exh. E, at ¶¶ 2.08, 5.01).

With Travelers having so abandoned its insureds, Julio & Sons has spent the past sixteen (16) months diligently defending itself and Mr. Glaser against the RRGC suit, incurring legal fees which are, in fact, Travelers' responsibility.    This defense is ongoing, and the legal fees incurred by Julio & Sons and Mr. Glaser continue to mount.

## LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure provides preliminary injunctive relief as a provisional remedy for those unique matters that require the Court's immediate attention. A moving party is entitled to a preliminary injunction so long as it makes an appropriate showing "that absent injunctive relief, it will suffer irreparable harm, and that either (a) it is likely to succeed on the merits, or (b) there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in its favor." *In re Worldcom, Inc. Securities Litigation Master File*, 354 F. Supp. 2d 455, 463 (S.D.N.Y. 2005) (J. Cote) (citing *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)). Where, as here, "a preliminary injunction [would] grant[ ] only part of the relief to which a movant would be entitled on the merits and requires a party 'to do what it should have done

earlier,' then it is judged under the standard for prohibited injunctions, and not the heightened standard for mandatory injunctions." *Worldcom, Inc.*, 354 F. Supp. 2d at 364 (quoting *Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988)). As Judge Cote observed in the *Worldcom, Inc.* litigation, when ordering an insurer to immediately advance defense costs under a directors and officers liability insurance policy:

> The heightened standard for a preliminary injunction does not apply to Roberts' motion. He seeks only part of the benefits to which he is entitled under the policy, the policy language strongly supports his argument that Continental should already have been advancing defense costs, and the injunction will not substantially interfere with Continental's right to obtain a meaningful remedy if it prevails on the merits. If it succeeds on the merits, Continental will have no obligation to pay any judgments against Roberts, and, as the policy itself recognizes, it has the right to recoup the defense costs. Nevertheless, even if the heightened standard applies, Roberts has established a clear and substantial likelihood of showing that he is entitled to defense costs prior to the adjudication of the rescission issues, and irreparable injury if those costs are not paid as they are incurred.

*Id.* The injunctive relief requested herein is no different than that granted by Judge Cote in the *Worldcom, Inc.* litigation – Julio & Sons seeks only part of the benefits to which it is entitled under the Travelers' Policy, the language of which "strongly supports" its argument that Travelers should already be advancing defense costs. Moreover, the injunction that Julio & Sons requests will not interfere with Travelers' right to obtain a meaningful remedy if it prevails on the merits because the Policy itself recognizes that Travelers has the right to recoup the defense costs. For these reasons, and as further detailed below, Julio & Sons is entitled to the injunctive relief requested herein.

## ARGUMENT

### POINT I

### TRAVELERS IS REQUIRED TO ADVANCE DEFENSE COSTS NOTWITHSTANDING ITS ASSERTION OF ANY COVERAGE DEFENSES

Texas law is well-settled that an insurer's duty to defend is broad, and that such duty exists "as long as the complaint alleges at least one cause of action within the policy's coverage." *Finger Furniture Co., Inc. v. Travelers Indem. Co. of Connecticut*, No. Civ.A. H-01-2797, 2002 WL 32113755, at *5 (S.D. Tex. Aug. 19, 2002) (quoting *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695 F.3d 695, 701 (5th Cir. 1996)) (a copy of this unreported decision is attached at Conway Decl. Exh. F). Texas courts follow the "eight corners" rule, which requires that a court "look only to the four corners of the most recent underlying petition and the four corners of the insurance policy when determining an insurer's duty to defend the insured in the underlying case." *Admiral Ins. Co. v. Briggs*, 264 F. Supp. 2d 460, 462 (N.D. Tex. 2003) (citing *Harken Exploration Co., supra*, 261 F.2d at 472). The allegations in the underlying complaint are liberally construed and so long as "the allegations in the underlying pleadings could even potentially trigger coverage, and the allegations do not on their face conclusively activate an exclusion, then the insurer must defend its insured against the claim." *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 612 (E.D. Tex. 2003); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) (obligation to defend arises if there is even "potentially, a case under the complaint within the coverage of the policy").

Even where an insurer contends that no coverage will ultimately be available, the insurer is nevertheless required to continue to advance defense costs under a D&O liability policy so long as the underlying complaint permits proof of facts establishing coverage until the insurer is

10

able to exclude the possibility of any recovery for which it provided insurance. *In re Enron Corp. Securities, Derivative & "Erisa" Litigation*, 391 F. Supp. 2d 541, 574 (S.D. Tex. 2005) (concluding "that the majority view, requiring payment of defense expenses up to a final adjudication, is the better rule.")  In *Enron*, the district court for the Southern District of Texas considered whether an insurer is required to advance defense costs incurred in a criminal proceeding against the insured where the policy at issue contained a "dishonesty exclusion" which, according to the insurer, excluded coverage if there was ultimately a finding of dishonesty on the part of the insured.  The *Enron* court endorsed the reasoning of the district court for the Western District of Pennsylvania, which explained that, for public policy concerns:

> If the D&O policy allowed absolute discretion to the insurer to withhold payment whenever charges of intentional dishonesty are leveled against [an insured], ... then insurers would be able to withhold payment in virtually every case.  That would be a most unsatisfactory result.  It would leave [insureds] in an extremely vulnerable position.  Any allegations of intentional dishonesty, no matter how groundless, could bring financial ruin upon [an insured] .... [Insureds] would be forced to advance their defense expenditures, which are likely to be staggering. Meanwhile the insurer defers all payment until the final disposition of suit, which may take years.  This situation is unreasonably favorable to the insurers who may blithely disclaim responsibility for the insured's enormous financial burdens while the insured must fight on.

*In re Enron Corp.*, 391 F. Supp. 2d at 574 (quoting *Little v. MGIC Indem. Corp.*, 649 F. Supp. 1460, 1468 (W.D.Pa. 1986) *aff'd*, 836 F.2d 789 (3d Cir. 1987)).  Judge Cote, in her decision granting a preliminary injunction requiring the advancement of defense costs to the insureds involved in the *Worldcom* litigation, agreed.  *Worldcom, Inc.*, 354 F. Supp. 2d at 465 ("Thus, under a D&O policy with a duty to pay defense costs provision, 'the insurance company's obligation to reimburse the directors attaches as soon as the attorneys' fees are incurred.' [...] to hold otherwise would not provide insureds with protection from financial harm that insurance policies are presumed to give.") (internal quotations omitted).

11

## POINT II

### THE RRGC SUIT ASSERTS COVERED CLAIMS AGAINST THE INSUREDS, THEREBY TRIGGERING TRAVELERS' DUTY TO DEFEND

In its disclaimer letter (Conway Decl. Exh. D), Travelers first asserted that Mr. Glaser "does not qualify as an Insured Person," and therefore is not entitled to coverage or the advancement of his defense costs, and cited the Policy's "breach of contract" exclusion as grounds for disclaiming coverage and refusing to advance defense costs to Julio & Sons. However, as a matter of law, neither of these grounds for disclaimer relieves Travelers of its contractual duty to advance defense costs incurred by both Mr. Glaser and Julio & Sons in defending against the RRGC suit.

### A.    Mr. Glaser is an Insured Person under the Policy

It is well-settled law that "[i]n the event an insurer obtains information from which it appears that there might be coverage for any of the damages sought from the insured, the [insurer] has a duty to defend even if the allegations of the complaint themselves would not give rise to such a duty." ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 4:3 (5th ed. 2007) (citing cases); *Harken Exploration Co., supra*, 261 F.3d at 476 (under Texas law, "when the petition does not contain sufficient facts to enable the court to determine if coverage exists, it is proper to look to extrinsic evidence in order to adequately address the issue.") (quoting *Western Heritage Ins. Co. v. River Entm't.*, 998 F.2d 311, 313-15 (5th Cir. 1993).[1]

---

[1] This rule is entirely consistent with the 8-corners rule applied by Texas courts. As explained by the concurring justices in *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448 (Tex.App.— Corpus Christi 1992, writ denied), "Texas courts have allowed facts outside the pleadings to be admitted into evidence to prove the existence of the insurance contract -- that is, who or what is insured. No courts have allowed evidence of the specific occurrence to determine whether the occurrence itself is covered by the policy, however."

483663.01

Travelers admits its knowledge of information obtained through the pleadings in litigation ancillary to the RRGC suit, which contained allegations by a former member of Julio & Sons' Board of Directors that Mr. Glaser was elected to the Board of Julio & Sons. Conway Decl. Exh. D, at 3. As someone who Travelers has information is a "past, present or future: (1) duly elected or appointed director [or] officer" of Julio & Sons, the Insured Organization, Mr. Glaser qualifies as an "Insured Person" and Travelers is therefore obligated with the duty to advance defense costs.

**B.      The Policy's Breach of Contract Exclusion Does Not Negate Travelers' Duty to Advance the Costs of Defending Julio & Sons in the RRGC Suit**

Travelers, as the insurer, "bears the burden of establishing that an exclusion in the Policy constitutes an avoidance of or affirmative defense to coverage." *Finger Furniture Co., Inc.*, *supra*, 2002 WL 32113755, at *5 (quoting *Canutillo Indep. Sch. Dist.*, *supra*, 99 F.3d at 701); *see also* TEX. INS. CODE § 554.002 ("In a suit to recover under an insurance or health maintenance organization contract, the insurer … has the burden of proof as to any avoidance or affirmative defense…Language of exclusion in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance or an affirmative defense").

Travelers also grounds its refusal to advance the defense costs incurred by Julio & Sons, the Insured Organization, in defending itself against the RRGC suit on the Policy's "breach of contract" exclusion. However, as noted above (*see* Factual Background, *supra*, at p. 7), Travelers itself described the RRGC suit to allege tortious conduct – namely, fraudulent and negligent misrepresentations and omissions – that occurred in connection with "financial transactions that [the parties] had entered into *or were planning to enter into*." Conway Decl. Exh. C, at 1.

13

Obviously, liability under a contract does not accrue unless a duty imposed by that contract has been breached. In contrast, liability under tort law attaches when a legal duty imposed on the defendant has been breached, irrespective and independent of whether that duty is imposed by contract. Thus, as a matter of law, the "breach of contract" exclusion could only apply if the underlying suit could not result in a judgment without a finding that the Insured Organization's liability arose under any express contract or agreement.

Illustrative is *Admiral Ins. Co. v. Briggs*, 264 F. Supp. 2d 460 (N.D. Tex. 2003). In that case, the underlying defendant was alleged to have failed to disclose material information that he was bound to disclose both by his contract with the plaintiff and as a matter of tort law. The exclusion in *Briggs* was broader than the exclusion here, as it excluded coverage which "in any way involved" a contract. The insurer argued that this broad language meant that if the wrongdoing was actionable both as a breach of contract, as well as a breach of a duty imposed by law, under tort principles, the exclusion should apply. The court rejected that argument, holding that conduct actionable in tort, even if also actionable as a breach of contract, cannot be deemed to even "involve" a contract within the meaning of the exclusion:

> [The insurer's] interpretation of this contract exclusion provision is overly broad. Its interpretation would exclude coverage under the Policy for all stock fraud claims because they all involve a contract for the sale of stock. [...] Admiral's interpretation of the contract exclusion provision would prevent coverage for misstatements by CPI's directors and officers, which are clearly covered under another provision of the Policy.

*Id.* at 462.

The *Briggs* case renders this case *a fortiari*. In *Briggs*, not only was the contract exclusion broader than the exclusion here, but it involved a claim that was simultaneously actionable as a breach of contract and a breach of duty. In a case such as the RRGC suit, where tortious conduct was alleged, a judgment is theoretically capable without a finding of contract

14

liability.   In the RRGC suit, as Travelers initially admitted, the claims included breaches of

contractual transactions and breaches of duty that pre-dated the entering into of a contract.

## POINT III

### JULIO & SONS HAS MADE AN APPROPRIATE SHOWING OF BOTH THE MERITS OF THIS CLAIM, AND THE LIKELIHOOD OF IRREPARABLE INJURY

Julio & Sons has already incurred substantial defense costs in connection with the RRGC

suit, and those costs continue to mount with each passing day.   The Policy expressly provides

that Travelers **"will advance** defense costs," yet Travelers has unilaterally refused to comply

with its contractual obligations under the Policy.   This Court has already held that "[t]he failure

to receive defense costs when they are incurred constitutes 'an immediate and direct injury'"

which justifies injunctive relief.  *In re Worldcom, Inc. Securities Litigation Master File*, 354 F.

Supp. 2d 455, 469 (S.D.N.Y. 2005) (quoting *Wedtech Corp. v. Federal Ins. Co.*, 740 F. Supp.

214, 221 (S.D.N.Y. 1990)).   Like the insured in *Worldcom*, Julio & Sons has shown irreparable

injury.  The RRGC suit is proceeding in Texas state court and the parties continue to prepare for

trial.  As noted by Judge Cote:

> Every party, including each director defendant, requires effective representation.
> It is impossible to predict or quantify the impact on a litigant of a failure to have
> adequate representation at this critical stage of litigation.  The ability to mount a
> successful defense requires competent and diligent representation.  The impact of
> an adverse judgment will have ramifications beyond the money that will
> necessarily be involved.  There is the damage to reputation, the stress of litigation,
> and the risk of financial ruin – each of which is an intangible but very real burden.

*Id.*, at 469.  Moreover, paying the costs incurred by Julio & Sons in defending the RRGC suit on

behalf of itself, and on behalf of Mr. Glaser, "places no undue hardship on [Travelers] as its

liability is capped.  In addition, the [Policy] requires defense costs to be repaid if [Julio & Sons]

is ultimately not entitled to such payments." *Id.* at 470.

15

## CONCLUSION

For the foregoing reasons, Julio & Sons is entitled to a preliminary injunction against Travelers requiring Travelers to, within ten (10) days of the presentment of Julio & Sons' legal invoices for the defense costs incurred in connection with an underlying suit by Retail & Restaurant Growth Capital, LP, pay all amounts in such invoices except those which Travelers establishes are not reasonable and necessary, subject to the Court's supervision, and to advance Julio & Sons' defense costs as they are incurred in connection with that underlying suit in the future.

New York, New York
Dated:  July 17, 2008

Respectfully submitted,

**PATTON BOGGS LLP**

By:    */s/ Philip M. Smith*
        Philip M. Smith (PS 8132)
        1185 Avenue of the Americas
        New York, New York 10036
        (646) 557-5100 Telephone
        (646) 557-5101 Facsimile

- and -

Of Counsel
Joseph M. Cox (*pro hac vice*)
Shannon W. Conway (*pro hac vice*)
2001 Ross Avenue, Suite 3000
Dallas, Texas  75201
(214) 758-1500 Telephone
(214) 758-1550 Facsimile

John W. Schryber (JS 7881)
2550 M Street, N.W.
Washington, D.C.  20037
(202) 457-6000 Telephone
(202) 457-6315 Facsimile

***Attorneys for Plaintiff***
***Julio & Sons Company***

16

483663.01