*Hearing Scheduled*
*September 19, 2008, 11:00 A.M.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JULIO & SONS COMPANY,

                      Plaintiffs,

    -against-

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

                  Defendant.

08 CV 03001(RJH)(DCF)
**ECF CASE**

---

**DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF
AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO JULIO & SONS'
MOTION FOR A PRELIMINARY INJUNCTION**

Boundas, Skarzynski, Walsh & Black, LLC
1 Battery Park Plaza
New York, New York 10004
(212) 820-7700

Attorneys for Defendant Travelers Casualty
and Surety Company of America

*Of counsel:*
James T. Sandnes
Evan Shapiro
Maria Moukides

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND.................................................................................4

    A.    Julio............................................................................................4

    B.    The Travelers Policy...................................................................5

    C.    The RRGC Suit and Relevant Parties.........................................7

    D.    The Julio–RRGC Agreements ....................................................9

    E.    Travelers' Coverage Position ..................................................10

ARGUMENT..................................................................................................12

    I.    THE LEGAL STANDARD FOR A PRELIMINARY INJUNCTION.................12

        A.    Julio Has Not Shown That It Will Suffer Irreparable Harm If Defense Costs are Not Advanced by Travelers .........................................13

        B.    Julio Has Not Submitted Any Evidence Suggesting that Travelers Should Already be Advancing Defense Costs............................16

        C.    Julio Has Not And Cannot Demonstrate Likelihood of Success on The Merits of Its Claim for Coverage.........................................17

            1.    Applicable Standards under Texas Law .................................17

            2.    Coverage Is Not Provided For Glaser As RRGC Does Not Sue Glaser For Conduct In His Capacity As A Director Of Julio........18

            3.    Coverage Is Not Available to Julio As The Policy's Broad Contractual Liability Exclusion Applies .................................21

    II.    IF THE COURT REQUIRES TRAVELERS TO ADVANCE DEFENSE COSTS, JULIO MUST PROVIDE AN UNDERTAKING AND THERE MUST BE ALLOCATION BETWEEN COVERED AND NON-COVERED DEFENSE COSTS.................24

    CONCLUSION..................................................................................25

TABLE OF AUTHORITIES

PAGE

## Cases

*Admiral Ins. Co. v. Briggs*, 264 F. Supp. 2d 460 (N.D. Tex. 2003) ...............................22, 22 n.10

*Beck v. American Cas. Co. of Reading, Pa.*, 1990 WL 598573 (W.D. Tex. 1990).......................19

*B. Hall Contracting, Inc. v. Evanston Ins. Co.*, 447 F. Supp. 2d 634 (N.D. Tex. 2006) ..............18

*Bondex Int'l, Inc. v. Hartford Accident & Indemn. Co.*, 2006 WL 2057349
  (N.D. Ohio July 21, 2006) ..........................................................................................14, 15

*Canutillo Indep. School Dist. v. National Union Fire Ins. Co. of Pittsburgh, PA*,
  99 F.3d 695 (5th Cir. 1996) ....................................................................................................17

*Chapman v. National Union Fire Ins. Co. of Pittsburgh*, 171 S.W.3d 222
  (Tex. App. 2005)..............................................................................................................22-23

*Dover Steel Co. v. Hartford Accident and Indemnity Co.*, 806 F. Supp. 63
  (E.D.Pa. 1992) ...................................................................................................12 n.6, 14, 15

*Gemini Ins. Co. v. The Andy Boyd Co. LLC*, 2007 WL 1855076 (5th Cir. 2007)........................21

*Gulf Chemical & Metallurgical Corp. v. Assoc. Metals & Minerals Corp.*, 1 F.3d 365
  (5th Cir. 1993) ........................................................................................................................25

*Harken Exploration Co. v. Sphere Drake Ins.*, 261 F.3d 466 (5th Cir. 2001).........................19, 23

*In re Enron Corp. Sec., Deriv. & "ERISA" Lit.*, 391 F. Supp. 2d 541
  (S.D.Tex. 2005) ..............................................................................................................14 n.7, 17

*In re Worldcom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455
  (S.D.N.Y. 2005)..........................................................................2, 6 n.4, 12, 13, 14, 15, 16

*Laird v. CNIL Lloyds*, 2008 WL 2756837 (Tex. App. July 17, 2008) .........................................17

*Medical Soc'y of N.Y. v. Toia*, 560 F.2d 535 (2d Cir. 1977).....................................................12

*National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*,
  939 S.W.2d 139 (Tex. 1997) ................................................................................................17

TABLE OF AUTHORITIES

PAGE

*Nautilus Ins. Co. v. ABN-AMRO Mortg. Group, Inc.*, 2006 WL 3545034
(S.D. Tex. Dec. 8, 2006) ................................................................................25

*Olson v. Federal Ins. Co.*, 268 Cal. Rptr. 90 (Cal. 2d Dist. Ct. App. 1990) ................................19

*Phico Ins. Co. v. Presbyterian Medical Services Corp.*, 663 A.2d 753 (Pa. Super. 1995) ..........23

*Society of Professionals in Dispute Resolution, Inc. v. Mt. Airy Ins. Co.*,
1997 WL 711446 (N.D. Tex Nov. 7, 1997)................................................................25

*Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453 (5th Cir. 2003)............................21

*Stamford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618 (9th Cir. 1996) ....................................23

*Wedtech Corp. v. Federal Ins. Co.*, 740 F. Supp. 214 (S.D.N.Y. 1990) ................................14 n.7

**Rules**

Fed. R. Civ. P. 16................................................................................................7

Fed. R. Civ. P. 65..............................................................................................12

Tex. R. Civ. P. 65 ..............................................................................................7

Defendant Travelers Casualty and Surety Company of America ("Travelers") submits this Memorandum of Law in opposition to the motion of Plaintiff Julio & Sons Company ("Julio") for a preliminary injunction requiring Travelers to advance defense costs under an insurance policy issued by Travelers to Julio (the "Policy" as more fully defined below) for a Texas litigation captioned *Retail Restaurant Growth Capital, LP v. MapleWood Partners, L.P., et al.* (the "RRGC suit"). In addition, Travelers submits certain relevant documents as exhibits to the accompanying Affidavit of Evan Shapiro dated August 19, 2008 ("Shapiro Aff. Ex. _").

## PRELIMINARY STATEMENT

In this action, Julio seeks insurance coverage for defense costs and settlements or possible judgments in connection with three separate Texas state court actions against Julio and/or its individual directors and officers. However, this motion seeks "advancement" of defense costs under the Policy only in connection with one of these actions: the RRGC suit filed approximately one and one-half years ago, in February 2007.

With respect to this RRGC suit, over nine months ago, Travelers advised Julio that coverage did not appear available for several independent reasons as discussed in more detail below, but expressly invited Julio to submit any information that might bear on its coverage determination.

Prior to filing this action, Julio did not challenge Travelers' coverage position or submit any additional information, as it was invited to do. Julio did not ask for reconsideration at any time, not even upon the apparent filing of a First Amended Petition in the RRGC suit (shortly after Travelers' coverage position was sent to Julio) and not upon the filing of a Second Amended Petition, some time thereafter. Indeed, Travelers was not aware of any amended pleadings until receipt of Julio's Complaint in this action and, to date, Julio has not provided copies of the Amended Petitions to Travelers for review and evaluation.

1

Further, although the Policy requires an Insured who seeks advancement of defense costs like Julio, to seek such advancement **by written request**, prior to filing this action, Julio never made any written request for advancement of defense costs. Nevertheless, Julio now asks this Court to employ the extraordinary remedy of a preliminary injunction to order such advancement. Under any measure, Julio has failed to establish the key elements necessary to support such relief: irreparable harm and likelihood of success on the merits.

Indeed, Julio's argument in support of its motion is little more than the assertion that because Judge Cote required an insurance company to advance defense expenses to individual directors of an insolvent company in the factually and procedurally distinguishable case of *In re Worldcom, Inc. Sec. Litig.,* 354 F. Supp. 2d 455 (S.D.N.Y. 2005) ("*Worldcom*"), defense expenses should *ipso facto* be advanced here. Yet, even a cursory reading of Judge Cote's thoughtful opinion in *Worldcom* shows that she expressly distinguished the situation before her, where **individual** directors and officers of an insolvent corporation were seeking funding of defense costs, from a situation where, **as here, a solvent corporation** is seeking insurance funding of defense costs. As noted below, other courts have recognized and agreed with this distinction in denying injunctions for advancement of defense expenses to solvent corporations.

*Worldcom* is not a magic talisman automatically mandating an injunction. Not only is that case plainly distinguishable from the situation here, even were it applicable, Julio has failed to present to this Court sufficient evidence of "irreparable harm" required to support an injunction. In particular, Julio seeks an injunction but **does not provide** the operative pleading in the RRGC suit, **does not provide** any information on the status of defense costs relative to the Policy's applicable $100,000 retention, and **does not provide** any information suggesting that, in the absence of an injunction, Julio will be unable to continue funding defense costs.

2

In addition, Julio has failed to meet its burden on the "likelihood of success on the merits" as, based on its clear and unambiguous terms, the Policy:  a) does not provide coverage to the sole individual defendant in the RRGC suit, Robert Glaser ("Glaser"), who is sued for his alleged conduct as a "majority shareholder" of Julio; and b) excludes from coverage the claims against Julio "for or arising out of or in consequence of any actual or alleged liability of [Julio] under any express contract or agreement" as is the case with all of the Counts in the RRGC suit.

As to Glaser, in order for coverage under the Policy to apply, a person must not only be a director or officer of the company, but he/she must also be sued in that capacity or for acts in that capacity.  Thus, the issue is not whether Glaser is, in fact, a director of Julio; the issue is, in what capacity was he sued.  On that issue, it is clear that RRGC's Original Petition expressly alleges *only* that Glaser is a "Majority Shareholder" of Julio.  It must also be noted that the ***only*** evidence that Julio provides with respect to the status of Glaser as a director of Julio is an artfully crafted declaration from Glaser in which he asserts only that he "was elected to the Board of Directors of [Julio] on or before February 15, 2007" (the day that the RRGC suit was filed).  This assertion leaves the Court and Travelers to wonder whether Glaser was even a member of the Board at the time of the acts alleged by RRGC.  Further, Glaser declares that Julio has been paying his defense costs but with only the vague explanation that Julio is indemnifying Glaser "because, *inter alia*, Mr. Glaser is alleged to be responsible, at least in part, for the alleged affirmative negligent misrepresentations made by [Julio] (and others)."  Julio's Opening Brief ("Julio Br.") at 2.  Not only is the stated reason for indemnification ***not because Glaser is a director***, but the Court and Travelers are left to wonder what might be the "*inter alia*" reason.

With respect to the Policy's contract exclusion, applicable to Claims against Julio, it is conceded by Julio that the breach of contract Count against Julio is excluded from coverage.

Julio nonetheless argues coverage is triggered by focusing on the "legal theories" pled in the other Counts. Julio's argument wholly disregards the RRGC Original Petition's reliance, with respect to each of those legal theories, on *the very same factual allegations that support the breach of contract Count*. Such identical facts demonstrate that each "tort" Count is "arising out of or in consequence of any actual or alleged liability of [Julio] under any express contract or agreement" and, thus, is excluded by the plain wording of the exclusion. To hold otherwise would effectively delete from the exclusion its "arising out of or in consequence of" wording and flies in the face of Texas courts' broad interpretation of that phrase.

Even if some part of the costs of the RRGC suit could be viewed as not arising as a consequence of contract, the Policy only covers the costs of defending *covered Claims*. Thus, any legal work done on claims that are not covered – as even Julio admits is the case as to the express breach of contract Count – cannot be subject to advancement. Moreover, according to the Dallas County Court's electronically available records (pleadings are not electronically available), it appears Julio and Glaser are prosecuting counterclaims and third party claims in the RRGC suit. Shapiro Aff. Ex. 4. Certainly, the costs of affirmative claims are not costs of defense. But, just as Julio did not bother to submit to this Court (or Travelers) the current pleadings, Julio does not mention anything about the counterclaim much less actually provide evidence as to the portion of its attorney's fees that relate to those counterclaims.

Accordingly, Julio's motion for a preliminary injunction must be denied.

## FACTUAL BACKGROUND

**A.    Julio**

Julio is in the business of operating a chain of Mexican-themed restaurants in Texas and several other states. In or about 2003, Julio and/or its related entities acquired another chain of

Mexican style restaurants operating in Texas known as Tia's Restaurants ("Tia's"). Tia's was not a good investment and filed for bankruptcy in 2006. Each of the three suits addressed in Julio's instant action against Travelers contain allegations concerning the Tia's investment and two of the suits (the RRGC suit and the "Shashy/Green suit") present internal board and shareholder disputes over whether the Tia's investment should have been made in the first place and who is responsible for the failure of this investment.

**B.    The Travelers Policy[1]**

Julio seeks coverage under the Directors and Officers Liability Coverage Part of Travelers Policy No. 104468586, issued by Travelers to Julio on a claims-made basis for the Policy Period from September 1, 2006 to September 1, 2007.[2] The Policy was originally issued with a $3 million Limit of Liability per Claim and in the aggregate, which Limit of Liability was increased by $2 million effective January 4, 2007, in reliance on a "no known acts/claims" warranty letter dated January 4, 2007. *See* Shapiro Aff. Ex. 1 at 47; Ex. 2.[3]

In the event of a covered "Claim," the Limit of Liability applies only after the Insured satisfies *a per Claim retention, inclusive of Defense Expenses, of $100,000*. Shapiro Aff. Ex. 2 at 1, 5. Specifically, the Policy provides that Travelers: "shall have no obligation to pay Loss,

---

[1] The Policy submitted by Julio as an exhibit to its Amended Complaint and in support of this motion is an incomplete version of the certified copy of the Policy provided by Travelers. A full copy of the certified Policy is submitted by Travelers (Shapiro Aff. Ex. 1) with the addition of consecutive page numbering for ease of reference.

[2] The Policy form, trademarked "The Wrap," allows an Insured to purchase some or all of different types of available coverage. As Julio asserts coverage is available under the Directors and Officers ("D&O") Liability Coverage Part, we address only that Part and the relevant aspects of the Common Terms and Conditions.

[3] As noted below, in the face of suits alleging that the board and investor disputes were brewing in the late fall of 2006, Travelers reserved its rights with respect to the accuracy of Julio's representation and warranty on January 4, 2007 that "no Insureds has knowledge of any act, error, omission, fact, circumstance or situation which might give rise to a claim under the policy." Shapiro Aff. Ex. 1 at 47, ¶(a).

including Defense Expenses, until the Retention amount has been paid by the Insured." Shapiro

Aff. Ex. 1 at 10, §III.B.1.

At the top of the Policy's Declarations, in capitalized and bolded text, the Policy

expressly notes that:

> **… THE COMPANY HAS NO DUTY TO DEFEND ANY CLAIM UNLESS DUTY-TO-DEFEND COVERAGE HAS BEEN SPECIFICALLY PROVIDED HEREIN.**

*Id.* at 4. Item 6 of the Policy Declarations demonstrates that "duty-to-defend coverage" is not

provided; the coverage purchased is "Reimbursement." *Id.* at 5.

Subject to all of its terms, conditions and limitations, the Policy's D&O Coverage

Insuring Agreement "B.1." affords specified coverage for Loss resulting from Claims against

"Insured Persons" (defined to include "past, present, or future duly elected or appointed director

… of Julio") and "*for Wrongful Acts*" (defined to include "any actual or alleged *act* … by an

Insured Person *in his or her capacity as a director … of the Insured Organization;* [or] any

matter asserted against an Insured Person *solely by reason of his or her status as a director … of

the Insured Organization*…"). Shapiro Aff. Ex. 1 at 40, ¶2; at 25, §G (emphasis added).[4]

The D&O Coverage further affords coverage under Insuring Agreement "B.2." in the

event of Claims against the Insured Organization (defined to include Julio) "*for Wrongful Acts*"

(defined as noted above and to include "any actual or alleged act, error, omission, misstatement,

misleading statement or breach of duty by the Insured Organization other than Wrongful

Employment Practices"). Shapiro Aff. Ex. 1 at 24, §I.B.2.; at 40, §2; at 25, §G (emphasis

added).

---

[4] Insuring Agreement A is not relevant here as it provides coverage for Loss resulting from Claims against Insured Persons <u>except</u> for Loss paid by the Insured Organization as indemnification. Nonetheless, it is noteworthy that the equivalent of Insuring Agreement A was at issue in *Worldcom*.

As relevant here, the coverage is limited by a broad exclusion expressly providing that the D&O Coverage shall not apply, and Travelers shall have "***no duty to defend or to pay, advance or reimburse Defense Expenses for***, any Claim … ***for or arising out of or in consequence of*** any actual or alleged liability of the Insured Organization under any express contract or agreement…." Shapiro Aff. Ex. 1 at 27, §III.11.e. (emphasis added). On its face, this exclusion is not limited solely to claims "for" liability under a contract. Additionally, this exclusion does not contain an exception for liability that would have attached in the absence of such agreement.

## C.    The RRGC Suit and Relevant Parties

RRGC filed its "Original Petition" on or about February 15, 2007. As noted in Julio's original Complaint in this action, RRGC filed a first amendment to its Petition in "October 2007" and a second amendment "in 2008." Julio Br. at 2. Prior to reference in submissions to this Court, Julio had not advised Travelers of any amendments to the RRGC Original Petition. Further, to date, Julio has not provided such amended pleadings to Travelers or the Court. Under Tex. R. Civ. P. 65, as under Fed. R. Civ. P. 16, an amended pleading wholly supersedes prior pleadings. Thus, the Court is asked to rule on a moot pleading.

In its Original Petition, RRGC describes itself as a "Dallas-based small business investment company [which] focuses on providing capital and strategic counseling for businesses operating in the retail and restaurant industry, with a particular emphasis on companies exhibiting the potential for accelerated growth and expansion." *See* Conway Dec. Ex. B at ¶10. RRGC further describes its "Relationship with [Julio's]" as involving a $3 million Note Purchase Agreement and a Warrant Agreement, which were first entered in December 2001 and were amended several times, including a Fourth Amendment in August 2005, and all of which are "interrelated" such that they "constitute one binding agreement between the parties"

7

(the "RRGC Agreement"). *Id.* at ¶¶13-16.

Defendants named in the Original Petition are: a) Julio, b) a group of related entities under the "MapleWood" name alleged to be investors and the majority shareholder of Julio, and c) Glaser, who is described in the Original Petition as "an individual doing business in Dallas County, Texas, and the Majority Shareholder of [Julio]." *Id* at ¶7. **RRGC does not allege that Glaser was or acted as a director or officer of Julio.**

In the Preliminary Statement of the Original Petition, RRGC alleges that the defendants are liable for breach of the RRGC Agreement and in tort by:

> (1) using [Julio] to guarantee $17 million in leases without Plaintiff's permission or consent for the purpose of acquiring [Tia's] via a "sale/leaseback" transaction; (2) advancing Tia's and its subsidiaries over $6.25 million from [Julio]'s operations; and (3) entering into transactions with affiliates that were not arms length transactions on reasonable business terms in the ordinary course of business.

RRGC also alleges that, in connection with the August 2005 Fourth Amendment to the RRGC Agreement, the defendants allegedly breached a duty to disclose that they had entered into the guarantees relating to the sale/leaseback transactions "and that they had entered into and were planning to enter into affiliated entity transactions." *Id.* at ¶21. This is **the very same conduct alleged to be a breach of the RRGC Agreement**.

Julio takes out of context both the RRGC Petition and Traveler's coverage position letter in asserting that the RRGC suit seeks liability for Julio inducing RRGC to enter a contract that Julio was "merely 'planning to enter into'" with RRGC. Julio Br. at 4. In fact, the RRGC Petition alleges that the defendants "were planning to enter into affiliated entity transactions" with parties other than RRGC. Conway Dec. Ex. B at ¶21. In any event, it is precisely **this conduct** that is alleged as the basis for the breach of contract Count **and the same conduct is**

*asserted* in each of the three tort Counts (for breach of fiduciary duty, fraud and negligent misrepresentation). *Id.* at ¶¶26, 31, 36, 43

Specifically, each substantive Count contains elements of a theory of liability and asserts that the misconduct under such theory arises from the "sale/leaseback transactions" whereby Julio guaranteed $17 million in leasing obligations and from the "affiliated entity transactions." *Id.* Each Count also asserts the same economic harm: "economic damages relating to the diminution in value of [RRGC's] warrants." *Id.*

**D.    The Julio-RRGC Agreement**

The RRGC Agreement (Shapiro Aff. Ex. 3) contains a number of provisions relevant to the RRGC suit.  For example, the original Note provides that Julio and its Subsidiaries "will not" incur non-specified Debt (*Id.* at 37, §8.4); "will not" make Investments other than Permitted Investments (*Id.* at 38, §8.8); and "will not" enter into or become liable under any Operating Leases other than certain specified Leases (*Id.*, §8.13).

Further the "Fourth Amendment" to the Note demonstrates that Julio's obligations with respect to the matters at issue in the RRGC Original Petition (purportedly improper lease guarantees, loans to Tia's and non-arms-length transactions) are directly addressed in the RRGC Agreement.  Specifically, the Fourth Amendment states that the original Note Purchase Agreement "sets forth various understandings" of Julio and RRGC concerning "covenants which restrict the right of [Julio] and its subsidiaries to incur additional debt and grant any liens or security interests in or upon any of its properties or assets." *Id.* at 112.  It is further stated that the Fourth Amendment is being entered into to address "certain Events of Default" under the original Note Purchase Agreement. *Id.*  The Events of Default, which are acknowledged and waived by RRGC, include those that exist "as a result of (i) advances to Tia's made prior to the

9

date hereof in an amount not to exceed $6,250,000, (ii) late delivery of payments and financial

information on or prior to the date hereof, and (iii) performance by [Julio] of advisory services

for Tia's prior to the effectiveness of this Fourth Amendment." *Id.* at 116. Further, this

Amendment reiterates the original Note's requirement that Julio provide RRGC financial

statements on a timely basis and establishes a financial penalty for failure to comply. *Id.* at 114.

## E.    Travelers' Coverage Position

Soon after receiving notice of RRGC's Original Petition, by letter dated March 7, 2007,

Travelers acknowledged receipt of the notice and indicated that further information was needed

for a full coverage evaluation. This letter included a summary of RRGC's allegations, full

reservation of Travelers' rights under the Policy, and a request for listed additional information.

Only after several follow-up letters from Travelers and nearly five (5) months, did Travelers

receive some (but not all) of the requested information under cover of a letter dated July 18,

2007, from an attorney who advised that she was "insurance coverage counsel" to Julio.

After review of the information so provided, by letter dated October 5, 2007, Travelers

provided Julio with a detailed coverage analysis concluding that coverage did not appear

available because:

1.  The Maplewood entity defendants and Glaser are not "Insureds." In reaching this
    conclusion, Travelers noted that it had received some information through pleadings
    in another suit suggesting that Glaser may be an Insured Person under the Policy, but
    has been unable to confirm that allegation. Travelers further states that whether
    Glaser is in fact an Insured Person is irrelevant as Glaser is being sued by RRGC in
    his capacity as a majority shareholder and not in his capacity as an Insured Person;
    and

2.  Concluding that Julio is an Insured under Insuring Agreement B.2., Travelers
    nonetheless noted that the contract exclusion (§III.A.11.e.) applied as all alleged
    obligations of Julio to RRGC arise from the contract represented by the RRGC
    Agreement.

Conway Dec. Ex. D.

Travelers also reserved its rights on other potentially relevant provisions and generally advised that it was proceeding under "a full and complete reservation of all rights, remedies and defenses under the Policy or otherwise."[5]  In this letter, Travelers also *expressly invited Julio "to submit any other information [it] may have which may bear on our coverage decision."* Id. at 4 (emphasis added).

Travelers did not receive any response to this letter or indication that Julio disagreed with its coverage analysis, until this coverage suit was filed in March 2008.  Further, at no time prior to this suit, was Travelers advised that RRGC had amended its pleading, first in late October 2007 - apparently about two weeks after Travelers mailed its coverage position letter.  Only after the instant motion was filed in July 2008 did Julio advise that the pleading was amended again in 2008.  Julio Br. at 6.

---

[5] Although not directly relevant at this time, Travelers' reservation of rights letter included:  a) in light of the proximity in time from the January 4, 2007 warranty statement upon which Travelers relied in issuing an additional $2 million limit of liability above the original $3 million limit of liability and RRGC's February 15, 2007 filing of suit; and b) in light of RRGC's allegations of intentional and/or fraudulent conduct, the Policy's intentionally dishonest or fraudulent act, willful fraud and illegal profit exclusions, which do not apply unless a judgment or other final adjudication establishes that such Insured committed such intentional, dishonest or fraudulent act, or willful violation.  Conway Dec. Ex. D.

## ARGUMENT

### I.    THE LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

Julio seeks a preliminary injunction pursuant to Fed. R. Civ. P. 65.  Such an injunction is an extraordinary and drastic remedy not routinely granted by Courts in this Circuit.  *See Medical Soc'y of N.Y. v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977).  A party seeking such relief has the burden to demonstrate that "absent injunctive relief, it will suffer irreparable harm, and that either (a) it is likely to succeed on the merits, or (b) there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in its favor." *Worldcom* at 463 (citation omitted).  Further, if the injunctive relief requested is for a "mandatory injunction" or one that "alters, rather than maintains, the status quo, a movant must establish a clear or substantial likelihood of success on the merits." *Id.*

In *Worldcom,* Judge Cote concluded that the heightened "mandatory injunction" standard did not apply in a case where policy language established that an insurer "should already have been advancing defense costs" to an ***individual director*** and "even if the heightened standard applies," the individual director before her had established "a clear and substantial likelihood of showing that he is entitled to defense costs prior to the adjudication of the rescission issues, and irreparable injury if those costs are not paid as they are incurred." *Id.*

As discussed below, even if the "lesser" standard for an injunction applies here (which Travelers does not concede),[6] Julio has failed to establish entitlement to an injunction because: a) Julio has made no showing that it will suffer "irreparable harm" if Travelers does not advance

---

[6]  In *Dover Steel Co. v. Hartford Accident & Indemn. Co.*, 806 F. Supp. 63, 67 (E.D. Pa. 1992), the Court noted that in the request for an injunction requiring advancement of defense expenses, plaintiffs "are, in effect, asking the Court to require defendants to pay plaintiffs the damages plaintiffs seek in the underlying contract dispute while that dispute is in the process of being litigated."

defense costs; b) Julio has made no showing that Travelers should already have been advancing defense costs; and c) Julio acknowledges that the coverage issues here can be decided as a matter of law (although Julio also indicates that there are amended pleadings in the RRGC suit that Julio has not submitted to the Court or Travelers). Therefore, there is no need to evaluate advancement of defense costs prior to determination of the coverage issues.

Further, the Travelers Policy provides: "[a]s a condition of any payment of Defense Expenses," Travelers is entitled to "require a written undertaking on terms and conditions satisfactory to [Travelers] guaranteeing the repayment of [such advanced Defense Expenses] … if it is finally determined that any such Loss incurred by such Insured is not covered under the Policy." Shapiro Aff. Ex. 1 at 12, §D.2.b. Yet, Julio makes no offer of such a written undertaking.

### A.    Julio Has Not Shown That It Will Suffer Irreparable Harm If Defense Costs Are Not Advanced by Travelers

In *Worldcom,* Judge Cote acknowledged that in the Second Circuit:

> The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction. To establish irreparable harm, a party must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. Irreparable harm must be shown to be actual and imminent, not remote and speculative. *Proof of a monetary loss will not suffice. The movant must show evidence of damage that cannot be rectified by financial compensation.*

354 F. Supp. 2d at 469 (emphasis added; internal quotations and citations omitted).

Judge Cote then focused on the circumstances before her: a corporation in bankruptcy that had not and could not fund the defense costs of its former individual directors and officers; an imminent trial (set to begin just 25 days after that opinion was issued); and relevant public policy considerations including the need for each individual director defendant to have effective representation. Judge Cote particularly noted issues unique to individuals:

> D&O insurance is not only designed to provide financial security for the
> individual insureds, but also plays an important role in corporate governance in
> America. Unless directors can rely on the protections given by D&O policies,
> good and competent men and women will be reluctant to serve on corporate
> boards.

*Id.* In these circumstances, Judge Cote found that irreparable harm was demonstrated by the

***individual*** seeking advancement of defense expenses.[7]

Judge Cote also expressly distinguished the situation before her (an ***individual*** seeking

insurer advancement of defense costs because the corporation which it had served could not fund

the defense due to its own bankruptcy) from the situation in *Dover Steel*, where a solvent

***corporation*** sought advancement of defense costs. *Id.* at 470. In *Dover Steel,* the Court

concluded that a corporate insured failed to meet its burden of demonstrating that immediate

reimbursement of amounts expended in defending a lawsuit was necessary to stave off

bankruptcy, as required under the irreparable harm element necessary for preliminary injunctive

relief. 806 F. Supp. at 67-68.

*Dover Steel* and Judge Cote's distinction (not rejection) of its holding points to a key

limitation of the *Worldcom* holding as applicable to ***individuals***, not solvent corporations.

Indeed, the post-*Wordlcom* ruling of *Bondex Int'l, Inc. v. Hartford Accident & Indemn. Co.,*

2006 WL 2057349 (N.D. Ohio July 21, 2006) notes precisely that distinction in denying a

***corporate*** insured's motion for an injunction requiring advancement of defense costs in advance

of resolution of a coverage dispute.

---

[7]  *In re Enron Corp. Sec., Deriv. & "ERISA" Lit.*, 391 F. Supp. 2d 541 (S.D. Tex. 2005), upon
which Julio also relies, is similarly distinguishable. Indeed, the quote from this case in the Julio
Brief at page 11 replaces the *Enron* decision's statement referencing claims against "directors
and officers" with a reference to the bracketed word "[insureds]." Like *Worldcom, Enron* is also
distinguishable from this case because Enron was a bankrupt corporation that could not fund its
directors and officers' defense costs, underlying insurance was paid and exhausted, and insurers
had conceded coverage. *See, e.g., id.* at 548, and 549 n.13. Julio also cites *Wedtech Corp. v.
Federal Ins. Co.*, 740 F. Supp. 214 (S.D.N.Y. 1990), which is distinguishable for the same
reasons.

In *Bondex,* as here, the insured entity relied on *Worldcom* as its evidence of irreparable harm. In response, the Court pointed out that:

> Judge Cote in [*Worldcom*] distinguished between directors & officers ("D&O") insurance on the one hand and the duty to defend and indemnify a corporation on the other. Judge Cote found irreparable injury in *WorldCom* due in large part to the policy consideration created by D&O insurance. More importantly, [she] cited *Dover Steel* and distinguished it from the matter before [her]; in other words, Judge Cote impliedly found that failure to defend under a D&O policy constitutes irreparable harm, but that failure to defend a corporation under an insurance policy does not.

*Id,* at \*2 (internal quotations and citations omitted).

*Bondex* went on to hold that: "the duty to defend and indemnify a corporation does not give rise to irreparable injury, necessitating preliminary injunctive relief." *Id. See also, id.* at \*1 ("financial harm such as [defense costs potentially in the millions of dollars], short of 'the prospect of imminent bankruptcy,' is not 'irreparable harm for purposes of awarding preliminary injunctive relief.'") (quoting *Dover Steel*, 806 F. Supp. at 65).

Here, Julio does not even attempt to offer evidence that it is financially unable to continue to fund defense expenses for it and Glaser. Indeed, Glaser's Declaration states that Julio has been paying both its own and his defense costs, without any suggestion that this has presented any hardship to Julio. In short, no evidence before the Court suggests that Julio is not fully capable of continuing to fund defense costs and/or has instructed its counsel not to fully participate in the defense of the suit. *Cf. Worldcom* at 469 n.16 (noting that one director's attorney "has represented that his client has instructed him to stop participating in depositions and in certain other work because of the cost of legal fees").

As Julio has utterly failed to proffer any evidence of irreparable harm, its application for the equitably remedy of an injunction must be denied.

**B.   Julio Has Not Submitted Any Evidence Suggesting that Travelers Should Already Be Advancing Defense Costs**

Assuming coverage for the RRGC suit (*but see infra* Sections I.C.2. and I.C.3. as to no coverage), it is significant that Julio has **not** provided this Court with any evidence that Travelers should already be advancing defense costs for the RRGC suit.  For example, Julio does not provide any information or evidence concerning the defense costs it has incurred to date, much less information allowing necessary allocation between the costs in connection with those aspects of the RRGC Petition it contends are covered and those for the breach of contract Count, which even Julio concedes is not covered.[8]

By the unambiguous terms of the Policy, the $100,000 retention must be satisfied by the Insured **before** Travelers has any obligation to pay "Loss" under the Policy.  Shapiro Aff. Ex. 1 at 10, §III.B.  Thus, there can be no advancement unless and until Julio produces evidence that its covered defense costs have exceeded the Policy's applicable $100,000 self insured Retention. Further, Julio does not - because it cannot - show that it requested (prior to litigation) that Travelers advance defense costs as required by the Policy.  Shapiro Aff. Ex. 1 at 12, §III.D.2.b. ("Upon written request, [Travelers] will advance Defense Expenses for which such Liability Coverage Part provides coverage.").

In contrast to the *ipso facto* argument presented here by Julio, the individual director in *Worldcom* sought advancement of defense expenses from an excess carrier upon showings that: (a) the entity Insured was not (due to bankruptcy) indemnifying the individual's defense expenses; (b) the primary carrier's Policy mandated advancement of defense expenses "prior to the final disposition" of a suit; (c) the primary carrier had acknowledged coverage for the claims

---

[8]   In the event the Court determines that coverage is available for any part of the RRGC suit, allocation would be required between defense expenses for covered and non-covered matters. *See infra* Section II.

against the directors and officers and had "paid in full" and exhausted; (d) the insurer did not

dispute that the Claims for which defense expenses were being sough fell within the coverage of

the policy but was not advancing costs because it was seeking rescission on grounds that

required further factual development. *Worldcom* at 459-63, 468.

In the absence of any affirmative proof that, assuming coverage, advancement of defense

costs would currently be due, Julio should not be heard on this application for equitable relief.

**C.    Julio Has Not And Cannot Demonstrate Likelihood of Success on the Merits of Its Claim for Coverage**

**1.    Applicable Standards Under Texas Law**

Under Texas law, interpretation of insurance contracts is governed by the same rules of

construction applicable to other contracts. *See, e.g., Enron,* 391 F. Supp. 2d at 567. Courts

"must strive to give effect to the written expression of the parties' intent [and] [o]nly if an

insurance policy remains ambiguous despite these cannons of interpretation should courts

construe its language against the insurer in a manner that favors coverage." *Laird v. CNIL

Lloyds,* 2008 WL 2756837, at *4 (Tex. App. July 17, 2008).

Further, in evaluating coverage, Texas courts examine the factual allegations rather than

the legal theories asserted and where various legal claims asserted are "related to and dependent

upon excluded conduct, the claims are not covered." *Canutillo Indep. School Dist. v. National

Union Fire Ins. Co. of Pittsburgh, PA,* 99 F.3d 695, 703-04, 705 n.7 (5th Cir. 1996). Texas

courts also "focus on the factual allegations that show the origin of the damages rather than on

the legal theories alleged." *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,*

939 S.W.2d 139, 141 (Tex. 1997) (citations omitted).

Julio bases much of its argument on the proposition that Texas law applies an "eight

corners" rule requiring an insurer to fulfill its "duty to defend" if review of the "eight corners" of

the operative complaint and the insurance policy "may" result in a covered judgment. *See* Julio Br. at 3, 10 (citations omitted). Travelers does not dispute this general principle. However, the Travelers Policy expressly does not impose upon Travelers a "duty to defend." Shapiro Aff. Ex. 1 at 5, Declarations Item 5 ("Type of Liability Coverage Reimbursement"), at 6, §II.D (covered Defense Expenses limited to those in connection with a covered Claim), at 12, §D.2.a ("If reimbursement coverage is provided … [Travelers] has no duty to defend any Claim."), at 12, §D.2.b (advancement of Defense Expenses only available with respect to matters for which coverage is provided). *See also, B. Hall Contracting, Inc. v. Evanston Ins. Co.*, 447 F. Supp. 2d 634, 644-45 (N.D. Tex. 2006) (noting that the eight corners rule assumes a duty to defend obligation), *vacated on other grounds*, 273 Fed. Appx. 310 (5th Cir. 2008). Further, as discussed below, and as acknowledged by Julio, even under the eight corners rule, Texas courts permit review of materials outside of the pleadings in circumstances where it does not go to the merits of the underlying claim but assists in evaluating coverage.

### 2. Coverage Is Not Provided For Glaser As RRGC Does Sue Glaser For Conduct In His Capacity As A Director Of Julio

As noted above, in pertinent part, the Policy's Insuring Agreement B.1 provides coverage for "Loss resulting from Claims … against an Insured Persons for Wrongful Acts" and defines "Wrongful Act" to mean conduct by an Insured Person "in his or her capacity as a director … of [Julio]" or "matter asserted against an Insured Person solely by reason of his or her status as a director … of … [Julio]." Shapiro Aff. Ex. 1 at 24-25.

Here, the Original Petition filed by RRGC in February 2007 and the only Petition submitted to Travelers for a coverage determination alleges that Glaser is "***the Majority Shareholder of Uncle Julio.***" Conway Dec. Ex. B at ¶7 (emphasis added). RRGC does not allege that Glaser was acting as a director or officer of Julio. Thus, on the face of the Original

Petition, even if Glaser was a director of Julio, RRGC does not sue Glaser in that capacity and/or for any conduct in that capacity. Where a pleading makes clear that claims asserted against individual defendants who are both shareholders and directors of a corporation are nonetheless asserted based upon conduct solely as a shareholder, the pleading controls the coverage determination. *See, e.g., Beck v. American. Cas. Co. of Reading, Pa.*, 1990 WL 598573, at *14-15 (W.D. Tex. April 12, 1990) (although individual defendants in suit were both shareholders and directors or officers of the insured entity, coverage was properly denied under a D&O policy with respect to allegations asserted against them for conduct in their capacity as shareholders); *Olson v. Federal Ins. Co.*, 219 Cal. App. 3d 252, 261-62 (Cal. 2d Dist. Ct. App. 1990) (no coverage for suit alleging conduct as a shareholder and not a director).

Julio does not contend, because it cannot, that the RRGC Original Petition's claims against Glaser for conduct as a "Majority Shareholder" trigger coverage under the Travelers Policy. This simple fact is the basis for Traveler's correct determination that coverage is not available to Glaser for the RRGC Suit.

Julio's reliance on *Harken Exploration Co. v. Sphere Drake Ins.*, 261 F.3d 466 (5th Cir. 2001) for the proposition that Travelers was required to look to extrinsic evidence to determine Glaser's status as an Insured Person entitled to coverage, is misplaced. *Harken* permitted review of evidence outside the operative pleading ***because the pleading did not contain sufficient facts to enable the court to determine coverage***. *Id.* at 476. Thus, the court had no choice but to look outside the operative petition to determine an essential element relevant to coverage.

Here, the essential element relevant for coverage (*i.e.,* whether Glaser is being sued in his capacity as an Insured Person) ***is plainly evident and provided for*** in RRGC's Petition - Glaser is being sued in his capacity as a "Majority Shareholder" of Julio. Conway Dec. Ex. B at ¶7. It is

19

unnecessary to look to extrinsic evidence because the Petition already contains sufficient facts necessary to determine the issue of coverage. As the Petition does not allege that Glaser's complained-of conduct was in his capacity as a director of Julio, coverage is not triggered regardless of whether or not Glaser was in fact a director or officer of Julio.

Moreover, although it is the pleadings - not the facts - that are relevant, it is telling that even now Glaser's Declaration does not establish that he was a duly elected director of Julio at the time of the events asserted in the RRGC Original Petition. Rather, Glaser states only that he "was elected to the Board of Directors of [Julio] on or before February 15, 2007" (Glaser Dec. ¶2), the date that the RRGC Petition was filed. This is clearly long after the purported misconduct described in the RRGC suit, which appears to have occurred prior to and including the August 2005 Amendment to the RRGC Agreement. *See* Conway Dec. Ex. B. ¶¶14-15, 21.

Julio also presents a myriad of different arguments on why coverage should be provided to Glaser including that: RRGC alleges Glaser is responsible for affirmative negligent misrepresentations by Julio and others (Julio Br. at 2); because the RRGC pleading "would permit" RRGC to pursue judgment against Julio for a misrepresentation by Glaser (*id.* at 2-3); or because Glaser may be liable for Julio's misstatements (*id.* at 5). However, that is not what is pled in the RRGC suit. What is pled, is that Glaser is liable for breaches of duties to RRGC as a "Majority Shareholder" of Julio. Whether alleged actions of Glaser as a majority shareholder can be imputed to Julio, or *vice versa*, is wholly irrelevant to the issue of whether RRGC sued Glaser in his capacity as an Insured Person. The answer to this sole relevant issue is that there can be no doubt that coverage is not available to Glaser on the face of RRGC's Original Petition.

As there is no basis in law or fact obligating Travelers to reimburse Julio for defense costs incurred in defense of the RRGC suit for claims asserted against Glaser solely as a majority

shareholder, Julio's motion for an injunction must be denied.

### 3.    Coverage Is Not Available To Julio As The Policy's Broad Contractual Liability Exclusion Applies

Travelers has properly denied coverage for Julio based on the "contract exclusion" in the

Policy, which broadly provides that coverage under Insuring Agreement B.2[9] "shall not apply to,

and [Travelers] **shall have no duty to defend or to pay, advance or reimburse Defense**

**Expenses for, any Claim:**"

> e.    *for or arising out of or in consequence of any actual or alleged*
> *liability of the Insured Organization under any express contract or agreement*;
> for the purposes of this exclusion, an "express contract or agreement" is an actual
> agreement among the contracting parties, the terms of which are openly stated in
> distinct or explicit language, either orally or in writing, at the time of its making;

Shapiro Aff. Ex. 1 at 27, §III.A.11.e (emphasis added).

Texas courts broadly construe the "for or arising out of" wording in this type of exclusion

and a claim need only bear an *incidental* relationship to the described conduct for the exclusion

to apply. *See, e.g., Gemini Ins. Co. v. Andy Boyd Co. LLC*, 2007 WL 1855076, at *2 (5th Cir.

June 26, 2007) ("when an exclusion prevents coverage for injuries 'arising out of' particular

conduct, '[a] claim need only bear an *incidental relationship* to the described conduct for the

exclusion to apply.'") (emphasis in original) (quoting *Sport Supply Group, Inc. v. Columbia Cas.*

*Co.,* 335 F.3d 453, 458 (5th Cir. 2003)).

Under these principles of interpretation, it is clear that, on their face, the allegations

against Julio in the RRGC Petition are barred by the broad contract exclusion because Julio's

purported breach of duties owed as a result of the RRGC Agreement is the essence of each Count

asserted by RRGC against Julio.

---

[9]    As noted above, Insuring Agreement B.2. applies in the event of a Claim against the Insured
Organization for its own Wrongful Acts (as opposed to those of any Insured Individuals).

Julio relies on the ruling in *Admiral Ins. Co. v. Briggs*, 264 F. Supp. 2d 460 (N.D. Tex. 2003), as "*a fortiori*" supporting the conclusion that the breach of contract exclusion should not apply. This reliance is misplaced. In *Briggs,* the Court was presented with a differently worded exclusion's application to an underlying securities fraud claim where the plaintiff had acquired the securities in issue as payment in lieu of cash due under a lease agreement.[10]

The insurer denied coverage on the grounds that the suit "*involves* a written contract, namely the lease." *Id.* at 462. Yet, the insurer had acknowledged coverage for other stock fraud claims. On these facts, the court concluded that the relevant breach of contract exclusion did not apply because such application would be inconsistent with the Policy's express coverage for securities fraud claims. *Id.* at 462-63. Additionally, the court concluded that the "lease contract did not cause the stock fraud claim, it simply provided the context in which the stock fraud took place." *Id.* at 463.

Here, in contrast to *Briggs,* the RRGC Agreement is not merely "the context" in which a fraud occurred. Rather, on the face of the RRGC Original Petition, the conduct alleged to be in breach of the RRGC Agreement is precisely the conduct that is alleged in the tort counts.

Moreover, in Texas, the contract exclusion in a D&O policy has been held to apply to allegations of breaches of fiduciary duty where the alleged breach of duty was the same as a duty created by a contract. *See, e.g., Chapman v. National Union Fire Ins. Co. of Pittsburgh,* 171 S.W.3d 222, 228 (Tex. App. 2005) (holding that a suit against a corporate officer by his former spouse, although "riddled with allegations of malfeasance by corporate officers" was nonetheless excluded by the D&O policy's breach of contract exclusion as, ultimately, the former spouse was

---

[10]  The exclusion in *Briggs* applied to claims "'based upon, arising out of, directly or indirectly resulting from or in consequence of, or *in any way involving* any oral or written contract or agreement' unless 'such liability would have attached to the Insured in the absence of the oral or written contract or agreement." *Id.* at 462 (emphasis in original).

seeking to enforce alimony obligations under a contractual divorce decree and the only breach of fiduciary duty alleged was one created by the divorce decree).  Other courts examining contract exclusions in other contexts similarly apply it broadly to claims sounding in tort but nonetheless factually bound to a breach of contract claim.  *See, e.g., Stamford Ranch, Inc. v. Maryland Cas. Co.,* 89 F.3d 618, 625-27 (9th Cir. 1996) (under CGL policy, which is interpreted under California law to apply only to tort liabilities and not liabilities arising in contract, although underlying suits alleged claims based on breach of contract and various torts, including negligent and intentional misrepresentation and nondisclosure, contractual liability exclusion held to apply because liability for all of these claims depends upon the existence of underlying agreements); *Phico Ins. Co. v. Presbyterian Medical Services Corp.*, 663 A.2d 753, 756-58 (Pa. Super. 1995) (under CGL policy's exclusion of contractually based claims, and although under applicable Pennsylvania law a breach of contract may also give rise to an tort, court concluded that exclusion applied to a suit for gross negligence, willful misconduct and breach of contract as the contract "unquestionably was not collateral to any of [the] claims.").

Further, review of the RRGC Agreement demonstrates that the very matters RRGC alleges were not disclosed and the very matters that RRGC alleges should not have been undertaken by Julio are matters that the RRGC Agreement requires Julio to disclose and/or not to undertake.  *See, e.g.*, Shapiro Aff. Ex. 3; *supra* in "Factual Background," subsection D.  As cases cited in Julio's Brief demonstrate, it is permissible under Texas law to review extrinsic evidence if the pleadings do not contain sufficient facts to enable the court to determine whether coverage exists.  *See, e.g., Harken,* 261 F. 3d at 476.

## II.  IF THE COURT REQUIRES ADVANCEMENT OF DEFENSE COSTS, JULIO MUST PROVIDE AN UNDERTAKING AND THERE MUST BE ALLOCATION BETWEEN COVERED AND NON-COVERED DEFENSE COSTS

The Policy expressly provides that Travelers has the right to require a "written undertaking" from its Insureds prior to advancement of defense expenses.  Shapiro Aff. Ex. 1 at 12, §III.D.2.b.  Thus, in the event that this Court grants injunctive relief to Julio and requires Travelers to advance Defense Expenses, the Court must also order Julio to provide an appropriate written undertaking and should afford Travelers a reasonable amount of time (at least 30 days) to review and analyze the invoices and additional time to process any appropriate payment.

Further, allocation would be required as Julio concedes that the Policy does not provide coverage for, at least, RRGC's breach of contract claim against Julio (Julio Br. at 7) and does not provide coverage for costs incurred in pursuing affirmative claims as Julio is apparently doing in the RRGC suit.  *See* Shapiro Aff. Ex. 4 (listing counterclaims and third party claims asserted by both Julio and the Glaser/Maplewood group).

Allocation is required as the Policy defines covered "Defense Expenses" to mean only "reasonable and necessary legal fees and expenses incurred in the investigation, defense, settlement and appeal *of a Claim.*" (Shapiro Aff. Ex. 1 at 6, §II.D (emphasis added)).  In sum, "Claim" is defined to mean demands, suits and other matters that are "against an Insured Person for a Wrongful Act ... or against the Insured Organization for a Wrongful Act."  Shapiro Aff. Ex. 1 at 24, §II.A (final sentence).  Further, the Policy's contractual liability exclusion expressly applies not just to the ultimate liability, but also applies to "*Defense Expenses for such Claim.*"

24

Shapiro Aff. Ex. 1 at 25, §III.A., and at 27, §III.11.B.[11] *See also Nautilus Ins. Co. v. ABN-AMRO Mortg. Group, Inc.*, 2006 WL 3545034, at *11 (S.D. Tex. Dec. 8, 2006) (concluding that where claims are not all covered by the Policy, the ***insured*** must pay its fair share of the defense of the non-covered risk) (emphasis added) (citations omitted); *see also, Society of Professionals in Dispute Resolution, Inc. v. Mt. Airy Ins. Co.*, 1997 WL 711446, at *7 (N.D. Tex. Nov. 7, 1997) (insurer entitled to apportionment of defense costs when there is a clear distinction between covered and non-covered claims).

## CONCLUSION

Julio's motion for a preliminary injunction should be denied as it is not supported by the facts, law or equities.  If the motion is granted, Julio must be required, per the Policy, to provide an undertaking guaranteeing the repayment to Travelers in the event it is ultimately determined that coverage is not available for this matter and should provide Travelers a reasonable time for review of fee statements and processing of payments.

Dated:    New York, New York
          August 19, 2008

                                        BOUNDAS, SKARZYNSKI, WALSH &
                                        BLACK, LLC

                                        By:    _____/s/ Evan Shapiro_____
                                               Evan Shapiro (ES-6650)
Of counsel:                             One Battery Park Plaza
    James T. Sandnes (JTS-8944)         New York, New York 10004
    Maria Moukides (MM-0431)            Telephone: (212) 820-7700

                                        Attorneys for Defendant
                                        Travelers Casualty and Surety Company of
                                        America

---

[11]  The Policy contains exclusions that apply only to the ultimate liability presented, but not to defense expenses. *See, e.g.,* Shapiro Aff. Ex. 1 at 27, ¶III.B (exclusion provides that Travelers "shall have no duty to pay Loss, ***other than Defense Expenses*** …") (emphasis added).