UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JULIO & SONS COMPANY,

                              Plaintiff,

      -against-                                      08 Civ. 3001 (RJH)

                                                      **MEMORANDUM OPINION**
TRAVELERS CASUALTY AND SURETY                              **AND ORDER**
COMPANY OF AMERICA,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Julio & Sons Company ("Julio & Sons" or "Julio") brings this action against defendant Travelers Casualty and Surety Company of America ("Travelers") for payment of claims made under an insurance agreement (the "Policy").[1] Plaintiff brought the motion presently before the Court as one for a preliminary injunction, but following oral argument the parties stipulated that the motion may be treated as one for partial summary judgment.  The sole issue before the Court is whether the allegations in the original complaint of the Texas litigation *Retail Restaurant Growth Capital, L.P. v. MapleWood Partners, L.P.* trigger Julio's right to advancement of defense costs under the Policy for the defense of both itself and director and majority shareholder Robert V. Glaser ("Glaser").  For the reasons that follow, the Court finds that they do and grants plaintiff's motion.


**BACKGROUND**

        The facts presented here are either undisputed or viewed in a light most favorable to the defendant.  On February 15, 2007, Retail Restaurant Growth Capital, LP

---

[1]  The Court cites to the Policy as paginated in Exhibit 1 to the Affidavit of Evan Shapiro [20].

("RRGC") filed suit against Julio & Sons and Glaser, among others.  (Pl. Reply Br. at 2; Def. Resp. to Pl.'s Supp. Reply at 7.)  The original complaint in that action (the "Underlying Complaint") describes Julio & Sons as doing business as "Uncle Julio's" and identifies Glaser as "an individual doing business in Dallas County, Texas, and the Majority Shareholder of Uncle Julio's."  (Underlying Complaint ¶¶ 6-7.)[2]  It describes RRGC as a "Dallas-based small business investment company" that "focuses on providing capital and strategic counseling for businesses operating in the retail and restaurant industry."  (*Id*. ¶ 10.)  RRGC is a creditor of Julio & Sons, having entered into a Note Purchase Agreement providing Julio & Sons with a $3 million loan.  (*Id*. ¶ 13.)  Pursuant to an accompanying Warrant Agreement, RRGC received warrants to purchase stock of Julio & Sons in return for providing the loan.  (*Id*.)  The Note Purchase Agreement and the Warrant Agreement were amended several times following the original transaction in 2001.  (*Id*. ¶ 14-15.)

The Underlying Complaint alleges four causes of action against Julio and Glaser:  (1) breach of contract; (2) breach of fiduciary duty; (3) fraud; and (4) negligent misrepresentation.  (*Id*. ¶ 23-47.)  These claims arise from allegations that Julio & Sons bought a company called Tia's Restaurant, Inc. ("Tia's"), guaranteed approximately $17 million in Tia's leases, and entered into transactions with affiliated entities in order to advance Tia's additional funds.  (*Id*. ¶¶ 17-18.)  Glaser was alleged to have caused Julio & Sons to take these actions.  (*Id*.)  Tia's subsequently filed for bankruptcy, causing "a diminution in the value of RRGC's warrants."  (*Id*. ¶ 19.)  The Underlying Complaint alleges that these actions were taken without RRGC's knowledge and consent and were

---

[2]  The Court cites to the Underlying Complaint as provided in Exhibit B to the Declaration of Shannon Conway [20].

in violation of the Note Purchase and Warrant Agreements as well as Julio and Glaser's fiduciary duties.  (*Id.* ¶¶ 17-20.)  These actions allegedly constituted fraud and negligent misrepresentation because, when Glaser and Julio & Sons amended the Note Purchase and Warrant Agreements in 2005, they "had a duty to disclose that they had entered [the transactions] and that they had entered into and were planning to enter into affiliated entity transactions" and failed to so disclose.  (*Id.* ¶ 21.)

While there is no evidence in the record that Julio & Sons requested that Travelers advance the costs of defending both Glaser and itself, Travelers did receive a copy of the Underlying Complaint shortly after its filing.  (*See* Letter of March 7, 2007, Conway Decl. Ex. C.)  After requesting additional information from Julio & Sons without success, Travelers denied coverage by letter dated October 5, 2007.  (Conway Decl. Ex. D at 1.) ("Based on our review of the materials provided to us, and for the reasons set forth below, Travelers must disclaim coverage for this matter . . . .")  Travelers indicated that because "Mr. Glaser did not meet the definition of Insured Person under the Policy", Julio & Sons appeared to be "the only Insured named in this litigation."  (*Id.* at 3.) However, it denied coverage to Julio & Sons under one of the Policy's exclusions because "it appears that all obligations to [RRGC] arise from the Insured Organization's obligations to that entity under a contract."  (*Id.* at 4.)  Travelers referenced the following listed exclusion:

### III.   <u>EXCLUSIONS</u>

A.     This **Coverage Part** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:
. . .
[11(e)] for or arising out of or in consequence of any actual or alleged liability of the **Insured Organization** under any

> express contract or agreement; for the purposes of this
> exclusion, an "express contract or agreement" is an actual
> agreement among the contracting parties, the terms of
> which are openly stated in distinct or explicit language,
> either orally or in writing, at the time of its making . . . .

(Policy at 24, 27 (emphasis in original).)

Julio & Sons subsequently commenced the current action and moved for a preliminary injunction ordering Travelers to advance the costs of defending itself and Glaser against the Underlying Complaint. Following oral argument, the parties submitted a "Stipulation and Proposed Order" memorializing their agreement: (1) that the motion be treated as a motion for partial summary judgment on whether Julio & Sons and Glaser were due reimbursement of defense costs under the Policy; (2) that Julio & Sons had produced documentation that Glaser was elected as a director of Julio & Sons at a Special Meeting of Shareholders on February 15, 2007; and (3) that in the event that judgment is rendered in favor of Julio & Sons, Traveler's rights under the Policy would not be otherwise limited by the decision.

## DISCUSSION

I.   **Standards of Review**

A.   **Summary Judgment**

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment . . .

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986); *see also Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 61 (2d Cir. 1998); *Conway v. Microsoft Corp.,* 414 F. Supp. 2d 450, 458 (S.D.N.Y. 2006).  A party moving for summary judgment may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

A fact is considered "material" for purposes of Rule 56 if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Whether a material issue is "genuine" depends on whether the evidence is of a type that would permit a reasonable jury to return a verdict in favor of that party. *Mitchell v. Shane,* 350 F.3d 39, 47 (2d Cir. 2003).  In making its showing that a genuine issue of material fact exists, the nonmoving party may not rely on "the mere existence of a scintilla of evidence" to support its position, but must instead proffer "evidence on which the jury could reasonably find for the [plaintiff]." *Dawson v. County of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004) (citing *Anderson,* 477 U.S. at 252).

**B.      Principles of Interpretation**

"Under Texas law insurance policies are subject to the general rules of interpretation and construction applicable to contracts." *Nautilus Ins. Co. v. ABN-AMRO Mortgage Group, Inc.*, No. H05 Civ. 2750, 2006 WL 3545034, at *2 (S.D. Tex. Dec. 8, 2006) (citing *Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 551 (Tex.

2003)).[3]  "When a contract as worded can be given 'a definite or certain legal meaning,'

then it is unambiguous as a matter of law and the court enforces it as written."  *Id.*

(quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995)).

If, however, a court determines that an insurance policy "is susceptible to more than one

reasonable interpretation, the court must resolve the ambiguity in favor of the insured."

*Id.*; *see also Gemini Ins. Co. v. The Andy Boyd Co.*, 243 Fed. App. 814, 815 (5th Cir.

2007) ("Exceptions and rules of limitation in an insurance contract are strictly construed

against the insurer.").

      "In general, the insured bears the initial burden of establishing that there is

coverage under an applicable insurance policy, while it is the insurer's burden to prove

the applicability of an exclusion permitting it to deny coverage."  *Nautilus Ins. Co.*, 2006

WL 3545034, at *2 (citing *Venture Encoding Serv., Inc. v. Atlantic Mut. Ins. Co.,* 107

S.W.3d 729, 733 (Tex. App. 2003)); *see also* TEX. INS. CODE § 554.002 ("In a suit to

recover under an insurance or health maintenance organization contract, the insurer or

health maintenance organization has the burden of proof as to any avoidance or

affirmative defense . . . Language of exclusion in the contract or an exception to coverage

claimed by the insurer or health maintenance organization constitutes an avoidance or an

affirmative defense.")

    **C.**    **The "Eight Corners" Rule**

      As an initial matter, the Parties disagree over the universe of evidence the

Court should consider on this summary judgment motion.  Plaintiffs argue that the Court

should apply what Texas courts call the "eight corners" rule to this dispute, limiting the

---

[3] Because the parties agree that Texas law governs this dispute, the Court does not address choice of law
issues.  (*See* Pl. Br. at 10; Def. Br. at 17.)

evidence to the four corners of the Policy and the four corners of the Underlying

Complaint.  (*See* Pl. Br. at 10; Pl. Reply Br. at 1-2.)  Defendant concedes the applicability

of the eight corners rule to insurance policies that contain a duty to defend, but denies its

applicably here because the Policy imposes a duty to advance defense costs and

"expressly does not impose upon Travelers a 'duty to defend.'"[4]  (Def. Br. at 18.)  The

Court concludes that Texas courts would likely apply the eight corners rule to both duty

to defend and duty to advance clauses, but that an exception to the rule permits the

consideration of limited but highly relevant evidence on the present motion.

> The Texas Supreme Court recently decided a coverage dispute concerning

a duty to defend, quoting the following language from the policy:

> > We agree to cover your legal liability for damages because
> > of bodily injury . . . to any person arising out of sexual
> > misconduct which occurs during the policy period.  We
> > shall have the right and duty to investigate any claim . . .
> > and to defend any suit brought against you seeking
> > damages, even if the allegations of the suit are groundless,
> > false or fraudulent . . . .

*Guideone Elite Ins. Co. v. Fielder Road Babtist Church*, 197 S.W.3d 305, 306 (Tex.

2006).  The duty to defend stands in contrast to the insurer's subsequent duty to

indemnify for defense costs incurred by the insured.  *Utica Nat'l Ins. Co. of Tex. v. Am.*

*Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("The duty to defend and duty to

---

[4] The Policy provides that:

> Upon written request, the Company will advance **Defense Expenses**
> for which such **Liability Coverage Part** provides coverage.  Such
> advanced payments by the Company shall be repaid to the Company by
> the **Insureds** severally according to their respective interests in the
> event and to the extent that the **Insureds** shall not be entitled to
> payment of such **Loss** under the **Policy**.

(Policy at 12 (emphasis in original).)

indemnify are distinct and separate duties.") (quotes and citations omitted).  "Although these duties are created by contract, they are rarely coextensive," *Guideone Elite Ins. Co.*, 197 S.W.3d at 310, with the duty to defend frequently adhering regardless of the merits of the third party suit and the duty to indemnify adhering only if the third party suit proves meritorious.  *See, e.g.*, *id*.  Moreover, the duties are invoked in different circumstances:  "A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend, whereas, the facts actually established in the underlying suit control the duty to indemnify."  *Id*.

The distinction is important because Texas courts, applying the "eight corners" rule, limit the evidence under consideration to the third party complaint and the policy when determining coverage for duty to defend claims:

> The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant.  Resort to evidence outside the four corners of these two documents is generally prohibited.

*Id*.; *see also Pa. Pulp & Paper Co. v. Nationwide Mut. Ins.*, 100 S.W.3d 566, 570 (Tex. App. 2003) ("In analyzing insurance-coverage disputes of this nature, [Texas courts] conduct a two-part analysis, looking first to the policy and then to the pleading to determine if coverage exists. . . . This standard for determining coverage from the four corners of the pleading and the four corners of the insurance policy is referred to as the 'eight corners' rule.")

Plaintiff, however, cites *Harken Exploration Co. v. Sphere Drake Ins. Plc.*, 261 F.3d 466, 476 (5th Cir. 2001) for the proposition that the eight corners rule

permits an exception "when the petition does not contain sufficient facts to enable the court to determine if coverage exists".  When the exception applies, "it is proper to look to extrinsic evidence in order to adequately address the issue." *Id*.  The court in *Harken Exploration Co.* cited *Western Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313-15 (5th Cir. 1993) for this proposition, which in turn cited *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448 (Tex. App. 1992).  In *Harken Exploration Co.*, the court approved the district court's reliance on the date of a lease nowhere contained in the third party complaint to conclude that the alleged wrongs were committed within the covered period and therefore that the duty to defend adhered.  *Harken Exploration Co.*, 261 F.3d at 476-77.  In *State Farm Fire & Cas. Co.*, the court looked outside the third party complaint and the policy to determine whether the defendant's boat was being used "in a commercial activity", a requirement of coverage and a fact impossible to determine from the third party complaint.  *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d at 543.

While these holdings appear to paint a rather broad exception to the eight corners rule, the Texas Supreme Court recently articulated a somewhat narrower view.  At issue in *Guideone Elite Ins. Co. v. Fielder Road Babtist Church*, 197 S.W.3d 305 (Tex. 2006) was the insurer's duty to defend a suit alleging sexual misconduct by an employee of the insured.  The conduct was covered by the insurer's policy, but the insurer argued that an admission by the insured that the employee in question had "ceased working for [the insured] on December 15, 1992, before the [insurer's] policy took effect" precluded coverage.  This admission, however, contradicted the third party complaint's allegation that the man "at all material times herein from 1992 to 1994 . . . was employed [by the insured]." *Id*. at 307.  The trial court held in favor of the insurer,

agreeing that the admission fell within the exception to the eight corners rule, but the intermediate appellate court reversed.  The Texas Supreme Court upheld reversal, holding that the extrinsic evidence directly contradicted an allegation in the third party complaint that was "material, at least in part, to the merits of the third party claim" and that "[u]nder the eight corners rule, the allegation's truth was not a matter of debate in a declaratory judgment action between insurer and insured."  *Id*. at 310.

In so holding, the Texas Supreme Court clarified not only the parameters of any exception to the eight corners rule but also the motivations behind the rule itself. First, not only did it note that it had never expressly recognized an exception to the eight corners rule, it effectively narrowed the rule articulated by other courts.  Citing *Western Heritage Ins. Co. v. River Entm't* and *State Farm Fire & Cas. Co. v. Wade* among others, the Texas Supreme Court noted that these courts had "drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." *Id*. at 308.  Quoting with approval a more recent Fifth Circuit case, it noted that an exception to the eight corners rule would be permissible only "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage in the truth or falsity of any facts alleged in the underlying case."  *Id*. at 309 (citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004)) (emphasis in original).

Second, the Texas Supreme Court gave two reasons for why courts could consider extrinsic evidence only if it went solely to the issue of coverage and did not

overlap with the merits of the underlying case:  (1) "because [holding otherwise would] pose[] a significant risk of undermining the insured's ability to defend itself in the underlying litigation", *id*. at 309; and (2) because holding otherwise "would by necessity conflate the insurer's defense and indemnity duties without regard to the policy's express terms", *id*. at 310.  In support of its first reason, the court pointed out that if extrinsic evidence regarding the status of the insured's employee had been permitted *ab initio*, the insured would have had an incentive to demonstrate that the man had at least apparently been employed during the covered period, and that such demonstration would later undermine its defense in the third-party action.  *Id*. at 309 n.3.  In support of its second reason, the court noted that because the duty to indemnify frequently depended on whether the underlying claim was meritorious, deciding issues going to the merits at the beginning of the lawsuit would conflate the defense and indemnity duties.  *Id*. at 310.

Defendant does not quarrel with the *Guideone* decision but contends that its applicability is limited to duty to defend policies and not apply to the duty to advance policy before the Court.  However, the Court has found no decisions by the Texas courts concerning a different standard for a duty to advance defense costs, and the reasons for applying the eight corners rule to duty to defend disputes appear to apply equally to the duty to advance described in the Policy.  *See Lowry v. Travelers Prop. & Cas. Co.*, NO. 99 Civ. 2727 (MBM), 2000 WL 526702, at *2 n.1 (S.D.N.Y. May 2, 2000); *Guideone Elite Ins. Co.*, 197 S.W.3d at 309.

The whole purpose of advancing legal expenses rather than reimbursing them at the conclusion of the litigation is that insured organizations may not have the cash on hand to finance their own defense.  If the insurer is permitted to look beyond the

policy and the pleadings to the merits of the claim, the insured is placed in the position of choosing between seeking reimbursement at the conclusion of the underlying litigation and risking its defense by challenging the insurer in court.  The former destroys any value advancement had, and the latter poses the exact same risk the eight corners rule seeks to eliminate in duty-to-defend cases.  *See Guideone Elite Ins. Co.*, 197 S.W.3d at 309.  Accordingly, the Court finds that, for the purposes of this motion, there are no material differences between a duty to defend and a duty to advance defense costs.

Application of the eight corners rule excludes the RRGC Agreement from consideration.  The agreement is the primary focus of RRGC's breach of contract claim, defining the relationship between RRGC and Julio & Sons.  Because any interpretation of the agreement would necessarily decide issues relevant to the merits of RRGC's claim, it does not qualify for the "narrow exception" to the eight corners rule and must be excluded from consideration.  *Id.*

Application of the test in *Guideone*, however, demonstrates that the Court may consider the documentation provided by Julio & Sons proving that Glaser was elected to the position of director on February 15, 2007.[5]  Whether or not Glaser was a director of Julio & Sons on February 15, 2007 or anytime prior is irrelevant to the merits of the claims in the Underlying Complaint.  Indeed, as the Court discusses below, because Glaser was not elected until the day the Underlying Complaint was filed, nothing in the complaint alleges that Glaser was a director nor does any claim rely on his status as a director.  Whether or not Glaser was a director is a pure coverage issue, which cannot

---

[5]  The Court has not actually seen this documentation.  As noted above, the parties have merely stipulated that such documentation exists and that it demonstrates that Glaser was elected to the position of director on February 15, 2007.

be determined by reference to the Underlying Complaint.  *Id.*  Accordingly, the Court

may consider documentation concerning Glaser's status as a director.

### III.      Coverage Under the Policy

#### A.        Julio & Sons is Covered under the Policy

The Policy states that defendant "shall pay on behalf of the **Insured**

**Organization** . . . **Loss** resulting from **Claims** first made during the **Policy Period**

against the **Insured Organization** for **Wrongful Acts** other than **Wrongful**

**Employment Practices**."  (Policy at 24 (emphasis in original).)  Defendant does not

contest that plaintiff qualifies as an "Insured Organization" or that the Underlying

Complaint is a "Claim" made during the "Policy Period" against Julio & Sons for

"Wrongful Acts".  Thus, the only issue for the Court to decide with regard to Julio &

Sons is whether coverage is excluded because the claims in the Underlying Complaint

"arise out of" Julio's alleged breach of contract.[6]

The claim for "Breach of Contract" falls clearly and unambiguously

within the exclusion cited by defendant.  The Underlying Complaint alleges:  (1) the

existence of a "Note Purchase Agreement" between RRGC and Julio & Sons; (2) that the

Note Purchase Agreement, together with a Warrant Agreement, constituted a "valid and

enforceable contract"; and (3) that Julio & Sons is liable because it "breached the

Agreement by entering into an undisclosed sale/leaseback transaction."  (Underlying

Complaint ¶¶ 13, 24, 26.)

---

[6] The Court looks solely at the claims set forth in the Underlying Complaint, as opposed to those claims set forth in subsequent amendments to the Underlying Complaint.  (Stipulation ¶ 2.)

Whether the remaining claims for "Breach of Fiduciary Duty", "Fraud", and "Negligent Misrepresentation" fall within the ambit of the exclusionary clause depends on how Texas courts have interpreted similar "arising out of" clauses.  As a general matter, Texas courts have interpreted clauses in similar contexts to create a broad exclusion from coverage.  *See Yates Carpet, Inc. v. Travelers Lloyds Ins. Co.*, No. 07-06-0478-CV, 2008 WL 2467881, at *1-2 (Tex. App. 2008) ("Authority has interpreted the phrase 'arising out of' as requiring only an incidental relationship between the claim and the conduct excluded."); *Sport Supply Group, Inc. v. Columbia Cas. Co.,* 335 F.3d 453, 458 (5th Cir. 2003) ("when an exclusion prevents coverage for injuries 'arising out of' particular conduct, [a] claim need only bear an *incidental relationship* to the described conduct for the exclusion to apply.") (quotes and citations omitted).  Considering a very similar clause, the Texas Supreme Court held that "'arise out of' means that there is simply a 'causal connection or relation', which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation."  *Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 203; *see also id.* (holding that "arising out of" clauses exclude a broader array of claims than those using "due to", which require a "more direct type of causation").

"Although Texas has adopted the more liberal 'but for' standard [for interpreting 'arising out of' exclusions], its decisions make clear that the line must be drawn at some point."  *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, No. 3:04 Civ. 63B, 2005 WL 954997, at *7 (N.D. Tex. Apr. 26, 2005).  For example, a clause excluding coverage for all liability arising out of an express agreement would have little meaning if interpreted to exclude all securities fraud claims merely because all securities transactions

are ultimately traceable to a written purchase agreement. *Admiral Ins. Co. v. Briggs*, 264 F. Supp. 2d 460, 462 (N.D. Tex. 2003) ("Admiral's interpretation of this contract exclusion is overly broad.  Its interpretation would exclude coverage under the Policy for all stock fraud claims because they all involve a contract for the sale of stock.")  Taking this logic to an even further extreme, too broad an interpretation of Texas's "but for" test would exclude all claims brought by a third party plaintiff in a contractual relationship with the insured because the plaintiff would never have done business with the insured "but for" the contract that initiated their relationship.

         The appropriate limiting principle lies in Texas's other prescription for making coverage determinations:  "we must focus on the underlying pleading's factual allegations that show the origin of the damages rather than on the legal theories alleged." *Pa. Pulp & Paper Co.*, 100 S.W.3d at 570; *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App. 1993) ("It is not the cause of action alleged which determines coverage but the *facts* giving rise to the alleged actionable conduct.") (emphasis in original).  This somewhat inscrutable rule was clarified by the Texas Court of Appeals in *Adamo v. State Farm Lloyds Co.*  In *Adamo*, the underlying complaint against the insured alleged, among other claims, legal malpractice and breach of fiduciary duty.  The policy held by the insured excluded coverage for legal malpractice but not breach of fiduciary duty.  The complaint alleged that the insured had provided legal advice to the third party plaintiff when he was subpoenaed to appear before a federal grand jury.  Specifically, the insured had advised the plaintiff to leave the country and hand over control of his business and assets while he was gone.  When the third party plaintiff returned, however, he found that his assets had been sold and a friend of the insured had control of his

business.  While the insured admitted that the complaint's claim for legal malpractice was

excluded, it argued that the breach of fiduciary claim was not excluded because it arose

out of a personal relationship between the third party plaintiff and the insured.  The court

rejected the insured's argument, holding that "[t]he fact that [the third party plaintiff] and

[the insured] were friends is incidental to the facts giving rise to this lawsuit."  *Adamo*,

853 S.W.2d at 676.  The court explained that "[b]ut for the fact that [the insured] were

lawyers, [the third party plaintiff] would not have turned to them for help" and that "[b]ut

for their counsel *as attorneys*, [the third party plaintiff] would not have relied upon their

suggestions on how to administer his affairs while he was gone."  *Id*.  In holding that the

breach of fiduciary claim was also excluded from coverage, the court reasoned that but

for the professional relationship alleged, there would have been no fiduciary duty to

breach.  *Id*. at 676-77.

      This rationale is born out in other cases that concern contract exclusion

clauses.  In *Chapman v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 171 S.W.3d 222

(Tex. App. 2005), the court found that the fiduciary duty alleged to have been breached

arose out of "specific sections of the divorce decree":

> For example, Turner did not allege that Broussard [the
> insured] breached any fiduciary duty in his capacity as a
> corporate officer or director-and the parties agree that
> Turner owned no stock in KCB and was not a shareholder.
> Rather, Turner alleged that Broussard breached his
> constructive trustee and fiduciary duty obligations
> expressly established under section 7.16 of the divorce
> agreement. Broussard and KCB respond that a breach of
> fiduciary duty claim sounds in tort. In this case, however,
> the only breach of duty Turner alleges is one expressly
> created by the settlement contract. Such a claim "arises out
> of" and is "attributable to" the alleged breach of the divorce
> agreement."

*Id*. at 228.  Consequently the court held that the third party plaintiff's claims "arise out of, are based upon or attributable to the divorce agreement [and] therefore, [that] exclusion (f) precludes coverage under the express contract exclusion . . . ."  Similarly, in a case cited by defendant, *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618 (9th Cir. 1996), the court found a contract exclusion precluded coverage for claims of negligent and intentional misrepresentation.  In *Stanford Ranch*, the insured had entered into a series of agreements with the third party plaintiffs for the sale of real property, each of which required that the insured use its "best efforts" to obtain certain government approvals regarding use of and title to the property.  In holding that the contract exclusion precluded coverage of the misrepresentation claims, the court held that "[liability] for all of these claims depend[ed] upon the existence of the underlying purchase agreements [and] without the purchase agreements, [the insured] would not have [had] a duty of care towards the claimants."  *Id*. at 625.  Finally, in *Admiral Ins. Co. v. Briggs*, 264 F. Supp. 2d 460 (N.D. Tex. 2003), the court did not find coverage of various securities fraud claims precluded by a contract exclusion.  In that case, the third party plaintiff alleged breach of a lease agreement and securities fraud.  The court rejected the insurer's argument that the exclusion applied because the securities in question were traded pursuant to the lease agreement, holding that such an interpretation "would exclude coverage under the Policy for all stock fraud claims because they all involve a contract for the sale of stock."  *Id*. at 462.  Unlike *Chapman* and *Stanford Ranch*, the duty owed by the insured to the third party plaintiff in *Admiral Ins. Co.* did not arise from the contract itself.  Rather, it arose from the securities law governing the purchase or sale of stock.

Turning finally to the issue of coverage for Julio & Sons under the Policy, the Court holds that the Policy's contract exclusion precludes coverage for the fraud and negligent misrepresentation claims but not the breach of fiduciary duty claim.  In its fraud claim, the Underlying Complaint alleges that the insured "had a duty to disclose the sale/leaseback transactions" but "failed to disclose and intentionally concealed these transactions from RRGC."  (Underlying Complaint ¶ 36.)  In its negligent misrepresentation claim, the Underlying Complaint alleges that the insured "did not exercise reasonable care or competence in obtaining and communicating information to RRGC."  (*Id*. ¶ 44.)  Fraud for non-disclosure and negligent misrepresentation require, respectively, an extant duty to disclose and duty to exercise reasonable care.  *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ("[A] failure to disclose information does not constitute fraud unless there is a duty to disclose the information."); *Cook Consultants Inc. v. Larson*, S.W.2d 231, 234-35 (Tex. 1985) (discussing the duty to exercise care when making representations).  These duties adhere only if a legally material relationship exists between the parties.  *Id*.  Here, the only such relationship between the parties was contractual.  Hence, to the extent the Underlying Complaint states valid fraud and negligent misrepresentation claims against Julio & Sons, the claims would not exist but for the express agreement with RRGC.  Like the same claims alleged by the underlying complaint in *Stanford Ranch*, Julio & Sons "would not have a duty of care towards the claimant[]", *Stanford Ranch, Inc.*, 89 F.3d at 625, absent this agreement.  Accordingly, these claims are excluded from coverage.

In contrast, RRGC's breach of fiduciary duty claim does not depend on the agreement between RRGC and Julio & Sons.  The Underlying Complaint alleges that

"[Julio & Sons], its officers, directors, and controlling shareholders owned [sic] fiduciary duties to RRGC by virtue of its status as a warrant holder."  Underlying Complaint ¶ 30. Hence, RRGC alleges that its fiduciary relationship with Julio & Sons arises not from the agreement between them but from its "status as a warrant holder."  While RRGC did obtain these warrants when it entered into the contract on which it bases its other claims, the court in *Admiral Ins. Co. v. Briggs* specifically rejected the analogous argument that securities claims arise out of the contract by which the securities were obtained.  *See Admiral Ins. Co.*, 264 F. Supp. 2d at 462.  Moreover, there are no allegations in the Underlying Complaint that suggest that the agreement RRGC had with Julio & Sons created any fiduciary duties.  *See Chapman*, 171 S.W.3d at 228.

Defendant attempts to distinguish *Admiral Ins. Co. v. Briggs* by noting that unlike that case, "the conduct alleged to be in breach of the RRGC Agreement is precisely the conduct that is alleged in the tort counts."  (Def. Br. at 22.)  The Court, however, is not persuaded that this distinction is dispositive.  Complaints frequently allege a variety of claims based on the same conduct.  In defendant's analysis, if one of those claims is a breach of contract claim, its exclusionary clause would preclude coverage of all claims.  But absent reason to single out the contract claim, there is no basis to conclude that the claims sound predominantly in contract or tort.  The "but for" test completes the analysis by directing courts to determine whether the duty alleged arises from a contract or adheres by operation of law.  *See Adamo*, 853 S.W.2d at 676-77.

Here, the Underlying Complaint coherently alleges facts giving rise to a breach of fiduciary claim that is independent of the RRGC agreement in that it is premised on RRGC's possession of warrants, not the manner in which it acquired the

warrants.  Accordingly, the exclusionary clause does not apply, the breach of fiduciary duty claim is covered, and defendant has an obligation to advance defense expenses to plaintiff.  *See Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 201.  Furthermore, in light of the Court's holding that, for the purposes of this motion, defendant's obligation to advance defense expenses is not materially different from a duty to defend, the Court finds that Texas law requires the defendant to advance such expenses for all claims because at least one claim in the Underlying Complaint gives rise to coverage.  *See id.* ("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy."); *Admiral Ins. Co. v. Rio Grande Heart Specialists of S. Tex.*, 64 S.W.3d 497, 503 (Tex. App. 2001) ("If coverage is found for any portion of a suit, an insurer is not relieved of its duty to defend because coverage may not be available for some of the causes pleaded.").

**B.      Robert Glaser is Covered under the Policy**

The Court must decide two issues to determine whether Glaser is covered by the policy:  (1) whether Glaser qualifies as an "Insured Person" under the Policy; and (2) if Glaser qualifies as an Insured Person, whether he is covered under the Policy given the capacity in which he is sued.  The first issue is dispensed with quickly.  The Policy defines "Insured Person" as "any one or more past, present or future duly elected or appointed directors or officers or members of the Board of Managers of the **Insured Organization**."  (Policy at 24.)  Given the Court's holding above that it can consider plaintiff's documentation establishing that Glaser was elected as a director on February 15, 2007, the conclusion quickly follows that Glaser qualifies as a "future director" and therefore as an Insured Person.

Focusing on the second issue, defendant argues that "regardless of whether or not Glaser was in fact a director or officer of Julio", the Underlying Complaint "does not allege that Glaser's complained-of conduct was in his capacity as a director" and therefore "coverage is not triggered".  (Def. Br. at 20.)  Defendant reaches this conclusion by pointing to the definition of "Wrongful Act" under the policy.  The Policy covers Insured Persons who incur losses resulting from "**Claims** first made during the **Policy Period** against the **Insured Persons** for **Wrongful Acts** . . . ."  (Policy at 24.) The Policy provides four alternate definitions for "Wrongful Act", only three of which are relevant here.  Defendant assumes that if Glaser is covered, his Wrongful Acts as pled in the Underlying Complaint must satisfy one of the first two definitions.  The first definition encompasses "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty . . . by an **Insured Person** in his or her capacity as a director, officer or member of the Board of Managers of the Insured Organization." (*Id*. at 25.)  The second definition encompasses "any matter asserted against an **Insured Person** solely by reason of his or her status as a director, officer or member of the Board of Managers of the Insured Organization."  (*Id*.)  The Underlying Complaint sues Glaser as "an individual doing business in Dallas County, Texas, and the Majority Shareholder of [Julio & Sons]."  (Underlying Complaint ¶ 7.)  Nowhere does the Underlying Complaint refer to Glaser as a director—an unsurprising fact considering that the Underlying Complaint was filed the same day Glaser was elected to the position. Accordingly, defendant concludes that Glaser is not entitled to coverage under either of the first two definitions.

Were these two definitions for "Wrongful Act" the only definitions provided by the Policy, the Court would agree with defendant that Glaser is not covered. Plaintiff, however, does not cite either of these definitions in its briefs.  Instead, plaintiff cites the fourth definition of "Wrongful Act":  "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the **Insured Organization** other than **Wrongful Employment Practices**."  (Pl. Reply Br. at 3-4.)  Combining this definition with the clause prescribing coverage for Insured Persons incurring losses from "**Claims** first made during the **Policy Period** against the **Insured Persons** for **Wrongful Acts**", (Policy at 24), plaintiff concludes that "the Policy promises coverage for defense costs incurred in lawsuits which may seek to hold an Insured Person personally liable for alleged Wrongful Acts by an Insured Organization."  (Pl. Reply Br. at 4.)

While defendant never responds to this argument, presumably it would argue that this definition was intended to define "Wrongful Act" only where it is used in the clause proving coverage for the Insured Organization.  (Policy at 24.) (covering the Insured Organization for "**Loss** resulting from **Claims** first made during the **Policy Period** against the **Insured Organization** for **Wrongful Acts** . . . .")  This interpretation is buttressed by the apparent attempt to cover vicarious liability in the second definition of "Wrongful Act", i.e., "any matter asserted against an Insured Person solely by reason of his or her status as a director . . . ."  At best, however, this is a reasonable interpretation competing with plaintiff's equally reasonable interpretation.  Competing reasonable interpretations produce an ambiguity in the contract, and Texas law requires the Court to resolve all ambiguities in favor of the insured.  *Nautilus Ins. Co.*, 2006 WL 3545034, at *2.  Accordingly, the Court holds that Glaser is covered under the Policy.

The Court acknowledges that its holding produces the anomalous result described by defendant in its response to plaintiff's Supplemental Reply Brief: "that coverage exists for Glaser merely because he became a director after his own allegedly wrongful conduct . . . and even though he is sued for his own acts, not those involving an insured capacity." (Def. Resp. to Pl.'s Supp. Reply Br. at 7.) The responsibility for such a result, however, lies with defendant and not the Court. Strict construction of insurance policies against the insurer has long been the practice of courts. It is the insurer's responsibility to draft its policies with sufficient precision to avoid ambiguities like the one found here.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment

is GRANTED.

SO ORDERED.

Dated: New York, New York
       December **17**, 2008

Richard J. Holwell
United States District Judge