UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

JULIO & SONS COMPANY,

                              Plaintiff,

            -against-

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

                              Defendant.

-------------------------------------------------------------------

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/15/10
```

08 Civ. 3001 (RJH)

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

        In this action, Julio & Sons Company ("Julio") is suing its insurer to enforce its rights
under an insurance agreement (the "Policy")[1] between the two parties. Under the terms of that
policy, the insurer, Travelers Casualty and Surety Company of America ("Travelers"), was to
advance defense expenses for certain kinds of legal claims against Julio. Julio claims that
Travelers has erroneously disclaimed coverage for three lawsuits against it—lawsuits brought by
Retail and Restaurant Growth Capital ("RRGC"), U.S. Foodservice ("USF"), and Abdo Shashy
("Shashy") and Gerald Green ("Green").[2] On December 17, 2008, this Court granted Julio's
motion for partial summary judgment as to the RRGC suit. Now the parties have cross-moved
for partial summary judgment as to the USF and the Shashy/Green suits. Julio has also asked the
Court for what amounts to declaratory relief on certain issues relating to damages and fees in the
RRGC suit. For the reasons that follow, the Court denies Julio's motion for partial summary
judgment and it grants Travelers' motion.

---

[1] The Court cites to the Policy as paginated in Exhibit C to the Affidavit of Shannon Conway.

[2] Julio asserted a coverage claim for the USF suit for the first time in its amended complaint. (Def.'s R. 56.1 Stmt. ¶ 3.)

## BACKGROUND

Unless otherwise stated, the factual background is undisputed by the parties.

### The Parties

Plaintiff Julio, which operates a Dallas-based chain of Mexican-themed restaurants, is a subsidiary of Julio Investors. (First Am. Compl. ¶ 1.) From what the Court gathers, Julio Investors is a holding company that Maplewood Partners, L.P., Maplewood Holdings, L.L.C., and Maplewood Management, L.P. (collectively, the "Maplewood Entities") formed to acquire control of Julio. (Shashy/Green Compl. Conway Decl. Ex. D ("Shashy Compl.") ¶ 5.04.) Julio does business under the name Uncle Julio's.[3] (*Id.* ¶ 5; Shashy Compl. ¶ 1.02.)

Defendant Travelers, an insurance company, issued an insurance policy to Julio Investors that covers both Julio Investors and its subsidiaries, including Julio.

### The RRGC Suit

Facts relevant to coverage for the RRGC suit are contained in this Court's December 17, 2008 decision, *Julio & Sons v. Travelers Casualty & Surety Co. of America*, 591 F. Supp. 2d 651 (S.D.N.Y. 2008), familiarity with which is assumed. In that decision, the Court held that the allegations found in the underlying RRGC complaint triggered Julio's right to advancement of defense costs for both Julio and its majority shareholder, Robert Glaser. *Id.* at 654. Now Julio seeks partial summary judgment to the effect that Travelers must pay (1) prejudgment interest for

---

[3] Julio's amended complaint identifies two Uncle Julio's entities—Uncle Julio's of Texas and Uncle Julio's Corporation—both of which it says are subsidiaries of Julio Investors. It provides no information about the relationship between Julio and these entities; nor do the parties' moving papers. Although the precise relationship between Julio and Uncle Julio's is uncertain, it is not central to the resolution of the parties' motions. For purposes of this opinion, the Court follows the Shashy/Green complaint's description: Julio does business as Uncle Julio's. (Shashy Compl. ¶ 1.02.)

the defense costs incurred by Julio in the RRGC suit and (2) the attorneys' fees Julio incurred in litigating whether the suit was covered. (Pltf.'s Mem. 17.)

**The Shashy/Green Suit**

In June 2007, Shashy and Green sued Julio and certain other persons insured by Travelers. (Pltf.'s R. 56.1 Stmt. ¶ 2.) Shashy is a former CEO of Julio (*id.* ¶ 5.01) and has been a shareholder since 2001 (*id.* ¶ 2.01); Green is a former employee of the company and a minority shareholder since at least 2003 (*id.* ¶ 2.02).[4]

Shashy and Green brought the lawsuit against Julio Investors; Julio; several individuals formerly employed by Julio; and the Maplewood Entities. The complaint claims that the Maplewood Entities used a holding company, Julio Investors, to acquire control of Julio in 2001 and thereafter caused the company to acquire an interest in a Mexican restaurant chain called Tia's Restaurant, Inc. ("Tia's") through a subsidiary called Tia's Holding, Inc. (*Id.* ¶¶ 5.03–04.)

Shashy and Green brought the suit both directly, in their capacity as minority shareholders in Julio, and derivatively, on behalf of the company against certain individual directors. (*Id.* ¶ 1.02.) Their core allegation is that Tia's was a disastrous investment (*id.* ¶ 5.05), and that to try to salvage the restaurant, the Maplewood Entities caused key talent to be diverted from Julio to Tia's, including pressuring Shashy to serve on Tia's board and requiring Green to become Tia's president. (*Id.* ¶ 5.07.) Shashy and Green also allege that the Maplewood Entities improperly caused financial resources to be transferred from Julio to Tia's to prop up Tia's books. (*Id.* ¶¶ 5.09–10.)

---

[4] Although the Shashy/Green complaint consistently refers to "Uncle Julio's" rather than "Julio," it also suggests that Uncle Julio's is simply the trade name for Julio. (*See* Shashy Compl. ¶¶ 5.01–02.) The Court reads the complaint to allege that Shashy and Green used to work for Julio, not Julio's trade name.

3

After receiving a copy of the Shashy/Green complaint from Julio, Travelers disclaimed

coverage in a letter dated October 5, 2007. Travelers noted that several of the named defendants

were Insured Persons and cited the following policy exclusion:

## III.   EXCLUSIONS.

A.   This **Coverage Part** shall not apply to, and the Company shall have no duty to
     defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:

     . . .

     8.   by or on behalf of, or in the name or right of, any **Insured**; provided,
          however, that this exclusion shall not apply to:

          a.   any derivative action by or on behalf of, or in the name or right of,
               the **Insured Organization** brought by a security holder of the
               **Insured Organization**, and brought and maintained independently
               of, and without the assistance, participation or intervention of any
               **Insured** . . . .

*(See* Letter dated October 5, 2007, Conway Decl. Ex. E, 3–4 (emphasis in original).) Travelers

determined that both Shashy and Green "were insured persons as they were directors and/or

officers of a number of Insured Organizations," and that the derivative action was "being brought

against Insured entities by other parties which meet the definition of Insured Person. None of the

exceptions to the exclusion apply and as such there is no coverage for this matter." *(Id.* 4.)

## The USF Suit

On or about February 14, 2007, USF filed suit against Julio in Dallas County Court.

(Def.'s R. 56.1 Stmt. ¶ 22.) However, Julio was not served with the complaint till May 10, 2007.

(Pltf.'s R. 56.1 Stmt. ¶ 8.) The complaint describes USF as a food seller and distributor to

restaurants and grocery stores. (USF Compl., Conway Decl. Ex. F ("USF Compl.) ¶ 8.) It

claims that Tia's asked USF to provide food products to it on "specified credit terms, and

promised payment for all such Products purchased." *(Id.* ¶ 9.) According to the complaint, USF

4

provided various products to Tia's for which it has not been paid. (*Id.* ¶¶ 10–11, 13.) USF

contends that because Julio operated as "a single business enterprise" with Tia's, it is responsible

for Tia's debt to USF. (*Id.* ¶ 12.)

Julio first provided notice to Travelers of the lawsuit under cover of a letter dated April 9,

2008. (Def.'s R. 56.1 Stmt. ¶¶ 24, 32.) Travelers denied coverage in a letter dated April 22,

2008. (Letter dated April 22, 2008, Conway Decl. Ex. G.) It relied on the following policy

provision:

## K.  INSURED'S DUTIES IN THE EVENT OF A CLAIM.

1.  As to all **Liability Coverage Parts**, it is a condition precedent to all
    insurance provided thereunder that:

    a.  In the event of a **Claim** made against any **Insured**, written notice
        concerning all particulars of such **Claim**, including all facts
        constituting the alleged **Wrongful Act** or **Wrongful Employment
        Practice**, the identity of each person allegedly involved in or
        affected by such **Wrongful Act** or **Wrongful Employment
        Practice**, and the date(s) of the alleged events, shall be provided to
        the Company as soon as practicable.

(*Id.* 3 (emphasis in original).) Travelers refused coverage on the ground that it did not receive

notice of the USF suit "as soon as practicable": the suit "was served on the insured on May 10,

2007 and was not reported to Travelers until April 7, 2008. . . . [It] was reported over 10 months

after the notice to the insured and over 7 months after the expiration of the Policy . . . ." (*Id.*) As

another reason to deny coverage, Travelers cited this provision:

## III.  EXCLUSIONS.

A.  This **Coverage Part** shall not apply to, and the Company shall have no duty to
    defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim**:

    . . .

    11.  with respect to Insuring Agreement B.2 only:

5

. . .

e.    for or arising out of or in consequence of any actual or alleged liability of the **Insured Organization** under any express contract or agreement; for the purposes of this exclusion, an "express contract or agreement" is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making . . . .

(*Id.* 3 (emphasis in original).) Travelers determined that coverage was not available under this exclusion because the USF lawsuit "arises out of contractual obligations entered into by the Tia's Restaurant Group." (*Id.*)

According to Julio, it settled the lawsuit with USF on or about May, 20, 2008. (Julio's First Am. Compl. ¶ 31.)

## STANDARD OF REVIEW

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On cross-motions for summary judgment, "the standard is the same as that for individual motions for summary judgment." *Natural Res. Def. Council v. Evans*, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

6

## DISCUSSION

## I.     The RRGC Suit

Julio's amended complaint requested, among other things, a declaration that Travelers

had breached its duty to advance defense expenses in the RRGC suit. Julio now asks the Court

for another declaration: that it is entitled to prejudgment interest on the defense costs it incurred

in the RRGC suit and to reasonable attorneys' fees it incurred therein. (Pltf.'s Mem. 17.) But

such a declaration was not sought in Julio's amended complaint (*see* First Am. Compl. 16).

Instead, what Julio really wants now are legal declarations that will clarify its calculation of

damages for Travelers' breach. Because disputed issues of fact still exist with respect to these

damages, the Court agrees with Travelers that granting partial summary judgment to Julio would

be premature. (*See* Def.'s Opp. 28.)

### Prejudgment Interest

Julio seems to want interest to run from each date it paid legal bills after Travelers

disclaimed coverage.[5] The Fifth Circuit squarely addressed the issue of prejudgment interest in

duty-to-defend cases in *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565–66 (5th

Cir. 2004). It held that once an insurer has breached its duty to defend, "prejudgment interest

should be assessed against [the insurer] based on the dates Plaintiff[] paid each bill for attorney's

fees." *Id.* at 565.

Even so, Travelers wants interest to be tolled for some period of time because it says

Julio is to blame for any delays in receiving reimbursement. Citing *Allison v. Fire Ins.*

*Exchange*, 98 S.W.3d 227, 264 (Tex. App. 2002), it contends that prejudgment interest is not due

---

[5] The parties agree that Julio had to pay a deductible under the policy, though they dispute the precise amount.
(Transcript of Nov. 12, 2009 Hearing ("Tr.") 6). Julio does not dispute that interest should only run on expenses
which exceed that deductible. (*See* Def.'s Opp. 30.)

for periods of time when "the insured caused the delay."[6] (Def.'s Opp. 29.) In *Allison*, the
insured wanted to recover prejudgment interest for the period of time between his rejection of a
check he received from the insurer—he said it was "based on invalid bids"—and his later
acceptance of a check from the same insurer for the same amount. *Id.* at 237. Travelers believes
that Julio has caused similar delays that justify tolling the accumulation of interest. Julio
disagrees. Given these factual disputes, the Julio's requested relief is better left for another day.

## Attorneys' Fees

Julio also wants the Court to rule that "Travelers must pay Plaintiff's reasonable
attorneys' fees incurred" in litigating whether plaintiff was entitled to coverage for defense of the
RRGC suit. (Pltf.'s Mem. 16–17.) Under Texas law, an insured party may "recover attorney
fees and costs after successfully suing an insurer for breach of a policy." *Gulf Chemical &
Metallurgical Corp. v. Assoc. Metals & Minerals Corp.*, 1 F.3d 365, 374 (5th Cir. 1993).
Travelers acknowledges this legal principle, but it argues that Julio has the burden to prove
which attorneys' fees were "reasonable and necessary" and has not yet done so. (*See* Def.'s
Opp. 24–25; Tr. 7.) The real issue in contention is not whether Julio is legally entitled to
reasonable attorneys' fees, but what amount those reasonable fees are. Thus Julio's requested
relief is unnecessary at this juncture.

## II. Shashy/Green suit

Travelers argues that it properly disclaimed coverage for the Shashy/Green suit because
the plaintiffs, Shashy and Green, are both Insured Persons, and the policy excludes claims

---

[6] Travelers sees this as part of the "analysis in *Primrose*," (Def.'s Opp. 30), but *Primrose* did not analyze the
question. Still, *Allison*, the holding of a Texas intermediate appellate court, "is a datum for ascertaining state law
which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court
of the state would decide otherwise." *J.C. Penney Corp., Inc. v. Carousel Ctr., Co., L.P.*, 635 F. Supp. 2d 126, 131
(N.D.N.Y. 2008) (internal quotation marks, citation, and emphasis omitted).

8

brought by Insured Persons against other Insureds, like Julio. Julio disputes that Green is an Insured Person; alternatively, it argues that, even if Shashy and Green are Insured Persons, it is covered under an exception to the policy exclusion.

The insured has the burden of showing that a claim is potentially within the scope of policy coverage. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). The insurer must then establish that "the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule."[7] *Id.* "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). "These rules favoring the insured, however, are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, then these rules do not apply." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998) (applying Texas law). A policy provision is ambiguous if it is susceptible to more than one reasonable interpretation, but just because the parties disagree about the provision's interpretation does not necessarily make it ambiguous. *Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 263 (Tex. App. 2001). "Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Ohio Cas. Group of Ins. Cos. v. Chavez*, 942 S.W.2d 654, 658 (Tex. App. 1997) (internal quotations omitted).

The threshold question here is whether Travelers' claimed policy exclusion applies. The Court holds that it does. The exclusion applies to claims brought "by or on behalf of, or in the

---

[7] Julio wants the Court to apply the eight-corners rule; Travelers does not. The Court has discussed that rule's scope elsewhere. *See Julio & Sons*, 591 F. Supp. 2d at 659–660. The rule would limit the universe of evidence for the Court to consider to the four corners of the underlying complaint—here, the Shashy/Green complaint—and the four corners of the insurance policy. The Court need not resolve the application of that rule here; even if it is applied, the underlying complaint reveals Green to be an Insured Person within the meaning of the policy.

9

name or right of, any Insured." (Policy 26.) "[A]ny Insured" is defined in the policy to include both an "Insured Person" and an "Insured Organization." (*Id.* 24.) The policy defines an Insured Person to include any "past, present or future duly elected or appointed director, officer, or member of the board of managers . . . of the Insured Organization," (*id.* 40), and an Insured Organization to include both the "Parent Organization"—here, Julio Investors—and any "Subsidiary," like Julio (*id.* 8).

There is no dispute that Shashy is an Insured Person. The Shashy/Green complaint describes him as Julio's former CEO and a member of its board of directors till 2007. (Shashy Compl. ¶ 5.01.) The parties disagree, however, about whether Green too is an Insured Person. Although Julio admits that Green bore the title of "President" of Tia's, it claims that Green was not duly appointed to that office as the policy requires. (Pltf.'s Mem. 9 (stating that the complaint "affirmatively denies" that Green was duly appointed).)

In construing a similar insurance provision, the Eleventh Circuit has said that a person is duly appointed or elected if "the procedures by which he was elected were conducted in a due manner, time, and degree." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1229 (11th Cir. 2005). The Shashy/Green complaint gives no reason to think, and Julio does not contend, that Green's appointment was procedurally deficient—that it, say, violated the company's bylaws. Instead, Julio argues that the Maplewood Entities "required" Green to become President, telling him over his "protest[]" that "he had no choice." (Shashy Compl. at ¶¶ 5.07, 5.08.) Julio, however, does not explain why a person's appointment, over his objection, makes him unduly appointed. It cites a Webster's dictionary entry that defines "duly" as "properly," "regularly," or "[i]n a due, fit or becoming manner." (Pltf.'s Opp. 14.) But a reluctant appointee does not make an improper one. On the evidence presented, the Court has no

10

difficulty concluding that Green was a duly appointed officer of an Insured Organization[8] and is himself an Insured Person.

The plaintiff's alternative argument is that, even if the "insured versus insured" policy exclusion applies, Julio is covered because the exclusion does not extend to shareholder derivative actions "by or on behalf of, or in the name or right of, the **Insured Organization** brought by a security holder of the **Insured Organization**, and brought and maintained independently of, and without the assistance, participation or intervention of any **Insured** . . . ." (Policy 26.)

By implication, the policy exclusion still applies where an Insured, such as an Insured Person, (1) participates, assists, or intervenes in a derivative suit (2) that a security holder of the Insured Organization has brought on behalf of that Organization. That is precisely what happened here. Shashy and Green are each security holders of an Insured Organization—Julio— and they have brought suit on behalf of that organization. Shashy and Green are also both Insured Persons. And of course Shashy and Green participated in their own lawsuit—they *brought* it. When shareholders bringing a derivative action on behalf of an Insured Organization are themselves Insureds, the derivative exception is inapplicable.

Julio's only real counter-argument is unpersuasive. It claims, without citation to any authority, that a derivative action "*assumes* that the plaintiff will not just be a 'shareholder,' but also will be an Insured. If the plaintiff's being both an 'Insured' and a shareholder were enough to negate the exception, the exception would never apply—making it illusory." (Pltf.'s Mem.

---

[8] At oral argument, plaintiff's counsel for the first time suggested that Tia's is not an Insured Organization and that Green's job as a Tia's executive would not make him an Insured Person. (Tr. 30.) That argument was not raised in the briefs. More importantly, the eight corners of the underlying complaint and policy reveal that Tia's *is* an Insured Organization. The Shashy/Green complaint indicates that Tia's is a wholly owned subsidiary of Tia's Holding, which is a wholly owned subsidiary of Julio Investors. (*See* Shashy Compl. 5.04.) Julio Investors is an Insured Organization (*see* Letter dated October 5, 2007, Conway Decl. Ex. E, 3), and wholly owned subsidiaries are covered under the Policy (Policy 8).

11

10.) Contrary to plaintiff's suggestion, the derivative action exception is not illusory: derivative lawsuits can easily be brought by stakeholders who are not insured under their company's coverage policy. *Cf. Carolina Cas. Ins. Co. v. Sowell*, 603 F.2d 914, 934 (N.D. Tex. 2009) (rejecting argument that a similar "Insured v. Insured Exclusion" did not apply to any shareholder derivative lawsuits, on the ground that this would "give[] insufficient weight to [its] language"). In such circumstances, the derivative action exception would apply. In the present circumstances, however, the Court finds that the exception to the policy's insured-versus-insured exclusion does not apply here. Accordingly, Travelers correctly disclaimed coverage for defense costs in the Shashy/Green suit.[9]

## III. USF suit

Travelers denied coverage for Julio's defense costs in the USF suit for two independent reasons: (1) notice was not timely given, and (2) the policy's contract liability exclusion excludes the USF suit from coverage. Because Travelers appropriately denied coverage for the first reason, the Court need not consider the legitimacy of the second.

Travelers' first ground for denial is that Julio's policy obligated it to give notice of "all particulars" of a lawsuit "as soon as practicable." Julio was served with the USF summons and complaint on May 10, 2007. (Pltf.'s R. 56.1 Stmt. ¶ 8.) Several months later, on April 7, 2008, Julio gave notice to Travelers of the USF suit by providing it with the summons and complaint. (Def.'s R. 56.1 Stmt. ¶ 24.) Travelers disclaimed coverage in a letter dated April 22, 2008, although it invited additional information from Julio which might bear on the coverage decision.

---

[9] Citing *Evanston Ins. Co. v. Atofina Petrochemicals, Inc.*, 256 S.W.3d 660, 672–74 (Tex. 2008), plaintiff maintains that it is entitled to reimbursement for the full amount of its settlement in the Shashy/Green and USF suits. (Pltf.'s Mem. 3.) In light of the Court's rulings on coverage for both suits, that argument is moot.

(*Id.* ¶¶ 34–35.) Julio did not respond, and it settled the USF suit in May 2008. (*Id.* ¶ 36; Def.'s Mem. 10.)

As a preliminary matter, the Court finds that Travelers has not waived its right to argue untimely notice. At oral argument, Julio's counsel claimed that it had. It said that Travelers failed to plead untimely notice as an affirmative defense, which "under Federal Rule 8 [is] an avoidance defense [that] has to be pleaded." (Tr. 8.) Julio's opening brief may allude to the same point. (Pltf.'s Mem. 14 ("Travelers has not alleged in its disclaimer or its Affirmative Defenses facts which, if credited, would establish that Clause K, within the meaning as it was written, was actually breached.").) In any case, courts have held that, "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Estate of Thompson v. Sun Life Assur. Co. of Canada*, Nos. 09-10365, 09-10036, 2009 WL 4016442, at *2 (5th Cir. Nov. 20, 2009) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983)). A defense is not waived if it was raised at a "pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Rogers v. McDorman*, 521 F.3d 381, 385–86 (5th Cir. 2008) (internal quotation marks and citation omitted). In *Estate of Thompson*, the Fifth Circuit found no prejudice or unfair surprise because the insured was put on notice of the insurer's position "at the time of the initial benefit denial." *Estate of Thompson*, 2009 WL 4016442, at *3. So too here, where untimely notice was Travelers' first stated ground for denying coverage in the disclaimer letter it sent Julio in April 2008. (Letter dated April 22, 2008, Conway Decl. Ex. G, 3.)

Julio's more serious claim is that it could not have reasonably discovered all the particulars of the USF suit prior to October 7, 2007, and that Julio had no obligation to comply with the notice provision after that date. This argument turns on the consequences of the Court's

13

prior ruling that Travelers was in material breach of the insurance contract on October 7, when it failed to advance defense costs to Julio in the RRGC suit. *See Julio & Sons*, 591 F. Supp. 2d at 654. It is black-letter contract law that a material breach entitles the non-breaching party either to rescind the contract and stop performing on its obligations, or to sue for relief under the contract, in which case the contract is still valid and the non-breaching party is not relieved of its obligations. *Inimitable Group, L.P. v. Westwood Group Dev. II, Ltd.*, 264 S.W.3d 892, 901 (Tex. App. 2008). But Texas courts have revised that principle in cases where an insurer has breached its duty to defend. In such cases, courts have said an insurer is unable "to enforce against the insured any conditions in the policy." *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983); *Quorum Health Resources, L.L.C. v. Maverick County Hospital Dist.*, 308 F.3d 451, 468 (5th Cir. 2002) (such an insurer "is precluded from insisting on the insured's compliance with other policy conditions"); *St. Paul Ins. Co. v. Rahn*, 641 S.W.2d 276, 278 (Tex. App. 1982) (same).

Citing these cases, Julio says that Travelers' breach excused it from complying with *any* policy obligation. But while those cases used language excusing insureds in sweeping terms, a recent Texas Court of Appeals decision undermined the breadth of that rule. In *U.S. Fire Insurance Company v. Scottsdale Insurance Company*, 264 S.W.3d 160 (Tex. App. 2008), the court allowed a breaching insurer to enforce against the insured a self-insured-retention ("SIR") policy provision. *Id.* at 172–73. The SIR provision limited the insurer's duty to defend to the period of time after the SIR limit had been exhausted. *Id.* The court reasoned that earlier cases like *Rhodes* and *Quorum*, while they may have used broad language, had really only excused noncompliance with a few provisions, mainly "no action" clauses.[10]

_____

[10] A no-action clause limits the insurer's liability to cases where the insurer itself was a party to the judgment or settlement. *See U.S. Fire Ins.*, 264 S.W.3d at 172. The court in *U.S. Fire Insurance* also mentioned that a half-

14

*U.S. Fire Insurance* indicates that cases like *Rhodes* and *Quorum* only carved out exceptions to, rather than eviscerated, general contract principles that govern the effect of a party's material breach. These exceptions are important ways of protecting insureds from unjustified denials of policy benefits, but they are exceptions nonetheless. The general rule of contract law—that a non-defaulting party must fulfill its contractual obligations if it elects to enforce the contract after the other party breaches, *Inimitable Group*, 264 S.W.3d at 901—still carries force in the insurance context. Thus even an innocent insured must satisfy its policy's SIR provision if it wishes to enforce the policy against its insurer. *See U.S. Fire Insurance*, 264 S.W.3d at 172–73. And, as Travelers suggests, even an innocent insured must comply with conditions that are unrelated to a claim for which coverage was denied. (Def.'s Opp. 19 (distinguishing cases like *Rhodes* and *Quorum* as excusing only "compliance with certain conditions directly related to the handling of [a particular] litigation" for which coverage had been denied).) Although Julio argues that it need not comply with *any* conditions of the insurance policy, none of its briefs cite *U.S. Fire Insurance*, let alone explain its impact on Julio's argument.

There is another reason to conclude that Julio must still satisfy its duty to provide notice of other legal claims: a different rule would produce strange outcomes. Consider the following scenario: a company buys a five-year claims-made policy from an insurer which requires that the company give the insurer notice of suit. The company is sued in the first year, and the insurer denies coverage without any good reason. The company is then sued repeatedly in the second,

---

century-old case had excused noncompliance with a notice-of-suit provision. But that case, *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 472–473 (Tex. 1957), involved notably different facts from those here. In *Womack*, the insurance company knew that its insured had been involved in an accident that might lead to a legal claim; before such a claim could be filed, it disclaimed liability for lawsuits stemming from the accident. *Id.* at 473. Given the timing of the disclaimer and the insurer's knowledge of the possibility of legal action, the court held that the insured need not have forwarded notice of a subsequently filed suit. *Id.*

15

third, fourth, and fifth years. On Julio's view, the insured is covered for all of those lawsuits, even if it never tells the insurer about any of them until the end of the fifth year when it sends the bill. That would be a strange and, in the Court's view, inequitable outcome. The Court holds that, at least for claims *different* from the claim for which coverage was denied, the insured must fulfill its policy duty to notify the insurer when it is sued.

This ruling means that Travelers may enforce its notice-of-suit provision against Julio. The notice provision requires Julio to provide notice "of all particulars" of a claim "as soon as practicable." The provision matters for two reasons: first, because the policy "does not require payment of pre-notice defense costs," giving notice "of all particulars" to Travelers is what triggers Travelers' duty to pay costs. (Pltf.'s Mem. 13.) Until sufficient notice is given, Travelers has no duty to pay. Second, the provision requires notice to be timely—in the policy's words, made "as soon as practicable"—which allows Travelers to refuse coverage when it is not.

All particulars, within the meaning of the policy, "include[e] all facts constituting the alleged Wrongful Act or Wrongful Employment Practice, the identity of each person allegedly involved in or affected by such Wrongful Act or Wrongful Employment Practice, and the date(s) of the alleged events." (Policy 13.) The policy does not define notice "as soon as practicable"; in contracts, Texas courts have construed the phrase to mean "within a reasonable time." *Federal Ins. Co. v. CompUSA*, 319 F.3d 746, 752 (5th Cir. 2003). When the relevant facts are not disputed, the question of whether notice was given "as soon as practicable" is "a question of law for the court." *Id.*

The parties suggest two possible problems with the notice Julio ultimately gave Travelers of the USF suit: it was sparse (just the summons and the complaint) and it was long in coming (eleven months after Julio received notice of the claim). Travelers' denial of coverage rested on

16

the second fact, but because the two facts are linked in Julio's argument, the Court pauses briefly to address the first.

Although Travelers has never argued that a complaint is insufficient notice under the notice-of-particulars provision in the policy, Julio makes just that claim. It says that the reason it waited a long time to provide Travelers with notice of the USF suit is that it needed time to collect the "particulars" that the policy required. Julio's argument is undercut by the fact that the notice it did provide in April of 2008 was simply a copy of the summons and complaint it had received in May of 2007. As a practical matter, it must argue that this notice was actually inadequate and that, even now, it lacks sufficient information about the USF suit to provide Travelers with its particulars.[11] (Pltf.'s Reply 6.) Assuming *arguendo* that Julio interprets the provision correctly, the Court is unsure what Julio intends the import of its argument to be. Julio acknowledges the following to be true: (1) Travelers' duty to advance expenses arises only after it receives proper notice; (2) Julio has to date not provided it with proper notice; and (3) Julio has now settled the lawsuit with USF. Although Julio does not exactly say so, these admissions taken together suggest that it has no claim to reimbursement for any defense expenses in the USF action.[12]

To give Julio's other arguments their proper weight, the Court will assume that a summons and complaint supplied adequate notice. Travelers denied coverage not for inadequate notice but for untimely notice: it determined an eleven-month delay in forwarding the complaint

---

[11] Considering that Julio has already settled the USF suit, it is hard to imagine which particulars it still lacks. The insurer is only required to advance expenses once it receives notice. Thus the policy provision that requires notice surely intends that, at some early stage of a litigation—and certainly by the end of it—the particulars will be evident enough. Otherwise, the insured would be unable to collect any benefit from its policy.

[12] In a footnote in its reply brief, Julio maintains that it was excused from providing notice of the USF suit because Travelers had already signaled that such notice would be a "futile act," by requesting more information from Julio after it had provided notice of the RRGC suit. (Pltf.'s Reply 11 n.12.) Unlike Julio, the Court does not take Travelers' request as an indication that any notice Julio provided Travelers of any claim, no matter how detailed, would be futile.

17

to Travelers was a failure to give notice as soon as practicable, as a matter of law. (Def.'s Opp. 17.) Applying a similar notice provision, the court in *CompUSA* reached a similar result. It found that notice eleven months after service of process, and six days after a jury verdict, was untimely. *CompUSA*, 319 F.3d at 752. Although the policy in *CompUSA* required only notice of a claim, not notice of a claim's particulars, it would not make a difference here. Julio does not seriously suggest that any kind of notice after eleven months could count as timely.

The Court finds that, even assuming Julio's notice was adequate, it was not provided to Travelers as soon as practicable. The only remaining issue the parties raise is whether Travelers must prove the late notice prejudiced it before it can deny coverage on that ground. The Texas Supreme Court has recently shed light on the question. In *PAJ, Inc. v. Hanover Insurance Co.*, 243 S.W.3d 630 (Tex. 2008), which involved an occurrence policy, the court held that an "insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay." *Id.* at 636–637. It distinguished occurrence policies from claims-made policies because, "[i]n the case of an 'occurrence' policy, any notice requirement is subsidiary to the event that triggers coverage." *Id.* at 636 (citation omitted). By contrast, timely notice is said to be central to a claims-made policy, whose benefit is the insurer's ability "to close its books on a policy at its expiration and thus to attain a level of predictability unattainable under standard occurrence policies." *Id.* at 380 n.9 (quoting *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir. 1994) (internal quotation marks omitted)); *see* 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 4.02(b)(4), at 142 (14th ed. 2008) ("The knowledge that after a certain date the insurer is no longer liable for newly reported claims under a claims-made policy enables the insurer to fix its reserves more accurately for future liabilities and to compute premiums with greater certainty.").

18

Last year, two Texas decisions extended *PAJ*'s prejudice requirement to claims-made policies—but only up to a point. *See Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 382–83 (Tex. 2009) (policy required notice "as soon as practicable . . . , but in no event later than ninety (90) days after the expiration of the . . . Discovery Period"); *Fin. Indust. Corp. v. XL Specialty Ins. Co.*, 285 S.W.3d 877, 879 (Tex. 2009) (policy required notice "as soon as practicable"). In both cases, the court found it sensible to require a showing of prejudice because the insured gave notice—albeit untimely notice—"within the policy's scope of coverage, i.e., before [the insurer] could 'close its books' on the policy." *XL Specialty Ins.*, 285 S.W.3d at 879. By implication, after a claims-made policy period has expired and the insurer has closed its books on that policy, untimely notice is a sufficient basis to deny coverage. Otherwise, the insurer would lose the benefits it bargained for in exchange for offering claims-made policies: "limiting the maximum 'tail' exposure period" and "avoid[ing] the increased risks associated with future inflation, the prospect of increasing jury awards, and unanticipated changes in the substantive law." 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 4.02(b)(4), at 142 (14th ed. 2008) (internal quotation marks and citation omitted).

Here, unlike in *Prodigy* and *XL Specialty*, the insured gave notice that was more than untimely—it came seven months after the policy coverage ended. The Court expresses no opinion on how, as a matter of policy, the right balance should be struck between protecting the benefits insurers derive from claims-made policies and protecting the rights of insureds. But as Texas appears to have struck the balance, notice of a claim that comes more than half a year after

a policy's coverage period has ended is reason enough to deny coverage. An insurer need not show prejudice when it receives notice of a claim so long after the policy's end.[13]

## CONCLUSION

For the foregoing reasons, Travelers' motion for partial summary judgment [46] is granted, and Julio's motion for partial summary judgment [42] is denied.

SO ORDERED.

Dated: New York, New York
      January  9 , 2010

Richard J. Holwell
United States District Judge

---

[13] Julio suggests that, under this rule, an insured who is sued the day before its policy expires would have only a day to provide notice of the claim. (Tr. 19.) The Court cannot say whether *Prodigy* and *XL Specialty Insurance* intended to draw a bright line at the very moment policy coverage ends. But they at least drew a line between notice that is given before the insurer has had the chance to "close the books" on a policy, and notice that is not. Seven months after a policy's coverage ends, the insurer's books are closed on that policy. *Cf.* 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 4.02(b)(4), at (14th ed. 2008) ("Because the reporting of a claim to the insurer during the policy period is one of the essential terms of a claims-made policy, a failure to give timely notice should be less excusable under a claims-made policy than it would be under an occurrence policy.").

20